*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0399p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

THE LONGABERGER COMPANY, as
Administrator of the Longaberger Family of
Companies Group Medical Plan,

> *Plaintiff-Appellee,*

No. 08-4432

*v.*

JEFFREY A. KOLT,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-00197—Lesley Brooks Wells, District Judge.

Argued: October 14, 2009

Decided and Filed: November 16, 2009

Before: BATCHELDER, Chief Judge; GRIFFIN, Circuit Judge; TARNOW,
District Judge.[*]

_____

## COUNSEL

**ARGUED:** George H. Carr, GALLAGHER SHARP, Cleveland, Ohio, for Appellant.
Daran Paul Kiefer, KREINER & PETERS CO. L.P.A., Cleveland, Ohio, for Appellee.
**ON BRIEF:** George H. Carr, Timothy John Fitzgerald, GALLAGHER SHARP,
Cleveland, Ohio, for Appellant. Daran Paul Kiefer, KREINER & PETERS CO. L.P.A.,
Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

GRIFFIN, Circuit Judge. Defendant Jeffrey A. Kolt appeals the district court's
denial of his motion for summary judgment and its grant of summary judgment for

_____

[*] The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of
Michigan, sitting by designation.

1

plaintiff The Longaberger Company ("Longaberger"), an Employee Retirement Income Security Act ("ERISA") governed, self-funded employee welfare benefit plan, which sought to enforce the terms of the Plan's reimbursement provisions against attorney Kolt and his client Samuel Billiter.[1]  Kolt argues that Longaberger's claims for monetary relief were barred by ERISA and principles of judicial estoppel, and were premised on an invalid lien which was subordinate to Kolt's lien.  We disagree and affirm.  In doing so, we hold that the district court correctly granted Longaberger equitable restitution as authorized by § 502(a)(3) of ERISA.

I.

On June 15, 2003, Samuel Billiter was involved in an automobile accident in which he was seriously injured.  Longaberger's self-funded plan covered Samuel Billiter (as the dependent child of Longaberger employee Theresa Billiter), paying his medical bills in the sum of $113,668.31.

Kolt, an Ohio attorney, represented Samuel and Theresa Billiter in civil tort actions against the negligent drivers involved in the June 15, 2003, accident.  In July 2004, Kolt reached settlements with the insurance companies of the two negligent drivers, receiving $35,000 from one carrier and $100,000 from the other carrier.  Kolt deposited the $135,000 from the two separate settlements into his Interest on Lawyer's Trust Account ("IOLTA").  He also sent an August 4, 2004, letter to Longaberger notifying it of the settlements, and stating:  "Mr. Billiter would like to try to amicabl[y] satisfy his subrogation obligation to you . . . ."[2]

On December 8 and 9, 2004, Kolt disbursed the majority of the settlement funds from his IOLTA.  Kolt kept $45,000 for himself as an attorney fee, disbursed $1,750 to attorney Jerry Alan Goodwin as compensation for his representation of Samuel Billiter

---

[1] Although Samuel Billiter was a defendant below, he did not appeal the district court's decision.

[2] The record contains a March 25, 2004, letter addressed to Kolt from Longaberger, which indicates, pursuant to Kolt's request, that Longaberger has provided him with a copy of the Summary Plan Description of the Longaberger Plan.  The record also contains a March 5, 2004, letter from Kolt to Health Design Plus, Longaberger's claims administrator, indicating Kolt's willingness to "protect [its] rights" to recovery.

in potential criminal proceedings, disbursed $86,082.18 to Samuel Billiter, and disbursed $1,000 to attorney Elliot Barrat in consideration for his representation of Samuel Billiter in bankruptcy proceedings.  Accordingly, only $1,000 remained in the IOLTA.

The Longaberger Company Health Plan is governed by ERISA and self-funded by Longaberger employees who contribute to the Plan through payroll deductions.  At the time of the June 15, 2003, automobile accident, the Plan's provisions provided Longaberger with "**RIGHTS OF REIMBURSEMENT AND SUBROGATION**[.]" The Plan's subrogation and reimbursement terms provided:

> The Plan does not cover:
>
>> (1) Expenses for which another party may be responsible as a result of liability for causing or contributing to the injury or illness of you or your Dependent(s); or
>>
>> (2) Expenses to the extent they are covered under the terms of any automobile medical, automobile no fault, uninsured or underinsured motorist, workers' compensation, government insurance, other than Medicaid, or similar type of insurance or coverage when insurance coverage provides benefits on behalf of you or your Dependent(s).
>
> If you or your Dependent(s) incur health care expenses as described in (1) and (2) above, the Plan shall automatically have a first priority lien upon the proceeds of any recovery by you or your Dependent(s) from such party to the extent of any benefits provided to you or your Dependent(s) by the Plan.  You or your Dependent(s) or their representative shall execute such documents as may be required to secure the Plan's rights.  The Plan has the right to recover from you or your Dependent(s) the lesser of:
>
>> • The amount actually paid by the Plan; or
>>
>> • An amount actually you or your Dependent(s) received from the third party at the time that the third party's liability is determined and satisfied; whether by full or partial settlement, judgment, arbitration or otherwise.
>
> When the Plan pays benefits to or on behalf of you or your Dependent(s), the Plan shall be subrogated, unless otherwise prohibited by law, to your and your Dependents' claims, causes of action or rights to recovery or

rights against any person who might be liable or found legally liable by a court of competent jurisdiction for the injury that necessitated the hospitalization, medical or the surgical treatment for which Plan benefits were paid. Such subrogation rights shall extend only to the recovery by the Employer of the benefits it has paid for such hospitalization, treatment or other medical care.

The Plan shall have a first priority claim against any proceeds paid by or on behalf of a liable third party and shall be entitled to reimbursement or subrogation regardless of whether you or your Dependent(s) have been made whole. The Plan's rights shall not be subject to reduction under any common fund or similar claims or theories. However, the Employer or its authorized representative may agree to a reduction from amounts recovered to pay reasonable and necessary expenditures, including attorney's fees, incurred in obtaining the recovery of Plan benefits. This may occur when, in the judgment of Plan Administrator, it would be in the best interests of the Plan to agree to such terms. These rights of reimbursement and subrogation are reserved whether the liability of a third party arises in tort, contract or otherwise. Regardless of how proceeds are designated, the Plan's rights shall attach to any full or partial judgment, settlement or other recovery.

In the event that benefits are to be paid by the Plan for expenses resulting from an injury for which a third party is liable, you or your Dependent(s), as appropriate, shall execute a Subrogation/Right of Reimbursement Agreement, in a form prescribed by the Plan. In addition, you and your Dependent(s) shall cooperate fully in the enforcement of the Plan's rights, and shall take all actions necessary to enable the Plan to secure such rights and in no way prejudice or diminish such rights without the Plan's written consent. You or your Dependent(s) shall inform the Plan of any settlement offers, and shall take no action in settlement or otherwise that would diminish the Plan's subrogation rights against the third party or diminish the Plan's reimbursement rights.

(Alterations in line spacing added.)

On February 4, 2005, Longaberger filed a complaint commencing suit against Kolt and Samuel Billiter alleging causes of action for constructive trust, equitable lien, and unjust enrichment.[3] Longaberger also sought a temporary restraining order and preliminary injunction to prevent Kolt from disbursing, commingling, or transferring settlement funds that were in Kolt's IOLTA. The district court granted a "limited

---

[3]Longaberger subsequently filed a first amended complaint on February 21, 2005, and a second amended complaint on November 6, 2006.

temporary restraining order" preventing Kolt and Samuel Billiter from disbursing any further funds and requiring the preservation of "the identifiable settlement funds paid on claims arising out of the June 15, 2003 automobile accident involving Samuel Billiter." Following a February 9, 2005, evidentiary hearing on Longaberger's motion for preliminary injunction, the district court also enjoined Kolt from dissipating the $1,000 he was still holding in his IOLTA.

On February 21, 2005, Longaberger amended its complaint to name Kolt as a defendant in his capacities as an individual and as a Trustee, and Theresa Billiter as a defendant. The amended complaint alleged claims against all named defendants for constructive trust, equitable lien, unjust enrichment, an accounting, equitable estoppel, and conversion, and against Kolt only for tortious interference with contract and breach of constructive trust. Thereafter, Kolt filed an April 4, 2005, motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that "an attorney retained by an ERISA plan beneficiary who receives settlement funds from a third party does not have any duty under ERISA to account to the ERISA plan for the proceeds received and cannot be held liable." The district court issued a June 29, 2006, decision in which it dismissed a number of Longaberger's claims, but allowed the ERISA claims for constructive trust, equitable lien, and unjust enrichment to proceed.

On November 6, 2006, Longaberger filed its second amended complaint, adding The Longaberger Family of Companies Group Health Plan as an additional plaintiff and dropping Theresa Billiter as a named defendant. In addition, Longaberger "clarified its position seeking 'equitable lien by agreement' in light of the" Supreme Court's 2006 holding in *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356 (2006), which altered the controlling law in the present case.

In June 2007, the parties filed cross motions for summary judgment. On September 3, 2008, the district court granted Longaberger's motion for summary judgment and denied Kolt's summary judgment motion. Specifically, the district held that:

Longaberger automatically acquired a valid lien on the tort recovery fund when the funds became identifiable. In addition, Longaberger seeks equitable rather than legal restitution because the Plan specifies a particular amount and a particular fund from which restitution should be paid.

Accordingly, the district court ruled in favor of Longaberger and against Kolt in the amount of $37,889.44 and against Samuel Billiter in the amount of $75,778.87.

Kolt timely appealed; Samuel Billiter did not appeal.

## II.

Kolt argues that the district court erred by awarding Longaberger equitable restitution against him. He maintains that because the majority of the settlement funds in his IOLTA had already been disbursed before Longaberger initiated its suit, Longaberger was pursuing a claim for money damages rather than equitable relief against him, and such claims are outside the scope of ERISA's permissible remedies. We review de novo the district court's grant of summary judgment. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 374 (6th Cir. 2007). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Thus, only disputed material facts, those "that might affect the outcome of the suit under the governing law[,]" will defeat summary judgment. *Id*. at 248. Once the movant has met its burden, the nonmoving party "must present significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.

1993).  When determining whether the nonmovant has met this burden, we must view the evidence in the light most favorable to the nonmoving party. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

Section 502(a)(3) of ERISA allows a civil action to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"  29 U.S.C. § 1132(a)(3).  "[O]ther appropriate equitable relief" is limited to relief that was "*typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993).  "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002) (footnote omitted).

In *Sereboff*, the Supreme Court discussed the validity of equitable liens created by provisions similar to those in this case and held that ERISA plans can enforce complete reimbursement of their equitable liens.  Marlene Sereboff and her husband, Joel, were injured in a car accident in California.  547 U.S. at 360.  Through Marlene's employer, the Sereboffs received health insurance benefits related to the car accident, which were administered by Mid Atlantic Medical Services, Inc. ("Mid Atlantic"), pursuant to ERISA.  *Id.*  The plan's "'Act of Third Parties'" provision provided that if the Sereboffs received benefits for an injury or illness and later recovered damages related to a tort claim against a third party for that injury or illness, the Sereboffs, as beneficiaries, would reimburse Mid Atlantic for the benefits they received.  *Id.* at 359.  The Sereboffs sued several third parties seeking damages for their injuries, and eventually settled their claims for $750,000, but they did not reimburse Mid Atlantic.  *Id.* at 360.

Mid Atlantic sued to enforce its lien under § 502(a)(3) of ERISA, arguing that it was entitled to reimbursement as a matter of equity.  *Id.*  In finding for Mid Atlantic,

the *Sereboff* Court relied on Justice Holmes' reasoning in *Barnes v. Alexander*, 232 U.S. 117 (1914), in which an attorney promised other attorneys one-third of a contingent fee for their assistance in a case. *Sereboff*, 547 U.S. at 363. In *Barnes*, Justice Holmes stated for the Court:

> "the familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." On the basis of this rule, he concluded that [the lead attorney's] undertaking "create[d] a lien" upon the portion of the monetary recovery due [to the lead attorney] from the client, which the [assisting attorneys] could "follow . . . into the hands of . . . [the lead attorney]," "as soon as [the fund] was identified[.]"

*Id.* at 363-64 (quoting *Barnes*, 232 U.S. at 121, 123) (first, third, and seventh alterations in original) (internal citations omitted). The *Sereboff* Court found that the terms of Mid Atlantic's plan created a lien similar to the one in *Barnes* because the plan's terms "specifically identified a particular fund, distinct from the Sereboffs' general assets – [a]ll recoveries from a third party . . . – and a particular share of that fund to which Mid Atlantic was entitled – that portion of the total recovery which is due [Mid Atlantic] for benefits paid." *Id.* at 364 (alterations in original) (internal citations and quotations marks omitted). Accordingly, the Supreme Court held that Mid Atlantic could pursue an action for appropriate equitable relief,[4] and because the lien by agreement attached when the fund was identified, Mid Atlantic was free to "follow a portion of the recovery into the [Sereboffs'] hands[.]" *Id.* (quoting *Barnes*, 232 U.S. at 123) (first alteration in original) (internal quotation marks omitted).

Kolt argues that "[b]ecause of Longaberger's delay and inaction, there is no longer any specifically identifiable fund in Kolt's possession on which Longaberger's lien can be imposed." Yet, an equitable lien by agreement does not require tracing or maintenance of a fund in order for equity to allow repayment. In *Sereboff*, the Supreme Court stated:

---

[4]In its decision, the Supreme Court expressly abrogated our holding in *Qualchoice, Inc. v. Rowland*, 367 F.3d 638 (6th Cir. 2004). *Sereboff*, 547 U.S. at 361 n.1.

> *Barnes* confirms that no tracing requirement of the sort asserted by the Sereboffs applies to equitable liens by agreement or assignment: The plaintiffs in *Barnes* could not identify an asset they originally possessed, which was improperly acquired and converted into property the defendant held, yet that did not preclude them from securing an equitable lien.

*Id.* at 365. The Court also noted that "the fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed." *Id.* at 366. "What is required, however, is that the agreement specifically identify a particular fund – distinct from the defendant's general assets – and a particular share of that fund to which the plan was entitled." *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 45 (6th Cir. 2007) (unpublished) (citing *Sereboff*, 547 U.S. at 364). *See also Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008) (allowing a claim under "29 U.S.C. § 1132(a)(3) even if the benefits it paid [the beneficiary] are not specifically traceable to [the beneficiary's] current assets because of commingling or dissipation."); *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 350, 362 (5th Cir. 2003) (allowing an ERISA plan to recover the settlement proceeds that the plan beneficiary's law firm had deposited into its trust account). *But cf. Knudson*, 534 U.S. at 214 (2002) (defendant never had collected a "tort" recovery because it was held by a California trustee, not by defendant).

Here, the Plan contains clear and unambiguous reimbursement provisions, indicating that its "rights of reimbursement and subrogation are reserved whether the liability of a third party arises in tort, contract or otherwise. . . . [and] attach to any full or partial judgment, settlement or other recovery."[5] Moreover, the explicit terms of the Plan state that it "shall automatically have a first priority lien upon the proceeds of any recovery by you or your Dependent(s) from such party to the extent of any benefits provided to you or your Dependent(s) by the Plan." The Plan language thus identifies

---

[5] Longaberger's reimbursement provision is indistinguishable from the reimbursement provision the Supreme Court enforced in *Sereboff*, where there also was an equitable lien by agreement between the plan and the beneficiary. In *Sereboff*, the plan contained an "'Act of Third Parties'" provision, which "require[d] a beneficiary who 'receives benefits' under the plan for such injuries to 'reimburse [Mid Atlantic]' for those benefits from '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise).'" *Sereboff*, 547 U.S. at 359.

a fund distinct from the beneficiary's general assets – "the proceeds of any recovery by you or your Dependents(s)" from a third party, and identifies a particular share of that fund to which the Plan is entitled – "the extent of any benefits provided to you or your Dependent(s) by the Plan." Accordingly, Longaberger's equitable lien attached to the settlement fund when it was identified and received in July 2004. Indeed, Kolt conceded at the district court's February 9, 2005, hearing that he "probably" was aware at the time he wrote his August 4, 2004, letter to Longaberger, stating that "Mr. Billiter would like to try to amicabl[y] satisfy his subrogation obligation to [Longaberger]," that the Plan contained language that indicates the Plan has a first priority lien and first priority claim over funds recovered from third parties.[6]

Kolt argues, however, that *Sereboff* and *Gilchrest* do not apply to him because he was neither a Plan fiduciary nor a beneficiary of the Plan. In *Ward v. Wal-Mart Stores Inc.*, 194 F.3d 1315, 1999 WL 801532, at *5 (6th Cir. Sept. 30, 1999) (unpublished table decision), this court upheld a district court's decision to award reimbursement to an ERISA plan, but reversed the district court's decision to deduct a pro rata share of attorney fees from the amount of the reimbursement. The *Ward* panel also stated that "[t]he Plan may then file suit against the attorneys to recover the remaining one-third of the amount it is due." *Id.* at *4. Longaberger contends that *Ward* is "established precedent" that "allows an ERISA plan to seek reimbursement from an attorney for taking a fee on funds which belong to an ERISA plan." Kolt counters that this single sentence in the *Ward* opinion is dicta and has no precedential effect. *See Johnson v. City of Cincinnati*, 310 F.3d 484, 493 (6th Cir. 2002); *Stockler v. Garratt*, 893 F.2d 856, 859 n.2 (6th Cir. 1990). Moreover, because *Ward* is an unpublished decision, it is not precedentially binding on this panel, but may be considered for its persuasive value. *Thompson v. N. Am. Stainless, LP,* 567 F.3d 804, 809 n.2 (6th Cir. 2009) (en banc) (citing *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007)).

---

[6]In his reply brief, Kolt acknowledges he testified that he was aware of Longaberger's claim, but he argues that "he [did not] admit that Longaberger's lien was valid, or that it had 'first priority' over any other claim[.]"

In *Mertens*, the Supreme Court ruled that damages, or legal remedies, were not recoverable under § 502 of ERISA, which allows only for equitable relief. 508 U.S. at 255-58, n.8; *see also Varity Corp. v. Howe*, 516 U.S. 489, 509 (1996). Thus, the issue that the *Ward* panel did not address is whether an ERISA plan's suit to recover plan funds from a beneficiary's attorney, who is neither a fiduciary nor beneficiary himself of the plan, is within the scope of "appropriate equitable relief" allowed by § 502(a)(3). If such a suit is not equitable in nature, the district court must be reversed.

To be sure, § 502(a)(3) limits the universe of potential plaintiffs who may bring a civil action for equitable relief to a "participant, beneficiary, or fiduciary" of an ERISA plan. The Act, however, does not contain a similar provision limiting the class of defendants in a § 502(a)(3) action. The Supreme Court recognized this in *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) in which it noted that "§ 502(a)(3) admits of no limit (aside from the 'appropriate equitable relief' caveat . . . ) on the universe of possible defendants."[7] Indeed, while other provisions of ERISA expressly identify the individuals or entities subject to suit, "§ 502(a)(3) makes no mention at all of which parties may be proper defendants[.]" *Id.* Accordingly, there is no statutory barrier that prevents Kolt from being a defendant in a suit brought pursuant to § 502(a)(3) of ERISA, provided that the relief sought lies in equity.

Here, Longaberger asserted an action for equitable in rem relief under § 502(a)(3) in which it sought to recover its assets through use of a constructive trust and reimbursement lien. Longaberger properly identified a specific fund (i.e., that portion of the settlement funds equaling the amount Longaberger paid to cover Samuel Billiter's medical expenses) that was in the possession and legal control of Kolt, but belonged in

---

[7] *Harris Trust* involved litigation between an ERISA plan and a "party in interest," which "encompass[es] those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." *Harris Trust*, 530 U.S. at 242. Nothing in the record suggests Kolt was likely to be favored by Longaberger, and thus we assume Kolt is not a "party in interest" for purposes of this litigation. The reasoning in *Harris Trust,* however, supports a finding that Kolt is a proper party defendant. *See Bombardier*, 354 F.3d at 353-54 (stating "the Supreme Court's reasoning in *Harris Trust* influences us to conclude today that § 502(a)(3) authorizes a cause of action against a non-fiduciary, non-'party in interest' attorney-at-law when he holds disputed settlement funds *on behalf of* a plan-participant client who is a traditional ERISA party. As *Harris Trust* makes clear, an entity need not be acting under a duty imposed by one of ERISA's substantive provisions to be subject to liability under § 502(a)(3).").

good conscience to the Plan. The fact that Kolt chose to disregard Longaberger's first priority lien and commingle the settlement funds does not defeat Longaberger's claim for equitable relief, because under *Sereboff*, Longaberger was free to follow a portion of the settlement funds into Kolt's hands. We therefore hold that the Plan sought and was awarded "appropriate equitable relief" from Kolt.[8]

### III.

In its motion for injunctive relief, Longaberger stated that "if Kolt disburses or otherwise commingles or uses the settlement funds which he holds in constructive trust for the benefit of the Plan, the Plan will forever lose the ability to recover its property." Moreover, Longaberger represented that it was "not seeking to enforce its contractual right to reimbursement from Billiter. Instead, Longaberger, on behalf of the Plan, [sought] title to or a security interest in a particular, identifiable account: namely, the settlement funds in Kolt's IOLTA account." Longaberger argued that it would be irreparably harmed if an injunction were not granted because "[i]f the money leaves the [IOLTA], Longaberger [would] be left without recourse and [would] be unable to enforce the terms of the Plan." Apparently persuaded by Longaberger's arguments, the district court granted a preliminary injunction on February 16, 2005, which required Kolt to maintain any remaining settlement funds in his IOLTA during the pendency of this litigation.

On May 15, 2006, the Supreme Court issued its decision in *Sereboff* which held that funds no longer had to be traceable or maintained in order for relief to qualify as equitable under ERISA. Because of *Sereboff*, Longaberger filed a second amended

---

[8]Our conclusion is consistent with rulings made in our sister circuits, including the Seventh Circuit, where the court in *Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000) held that a plan's § 502(a)(3) action for a constructive trust over settlement funds presumed to be held in escrow by the beneficiary's attorney "nestle[d] comfortably" within "ERISA's concept of equity." *See also Bombardier*, 354 F.3d at 358 n.43 (holding plan's suit against law firm for constructive trust was a suit for "appropriate equitable relief"); *Great-West Life & Annuity Ins. Co. v. Bullock*, 202 F. Supp. 2d 461, 465 (E.D.N.C. 2002) (indicating that "the Court would find a cause of action lies [under section 502(a)(3)] where there are allegations of attorney wrongdoing or his intentional effort to 'enable' plan participants to avoid plan provisions."); *Greenwood Mills, Inc. v. Burris*, 130 F. Supp. 2d 949, 960 (M.D. Tenn. 2001) (holding that "[a] lawyer who is fully aware of his client's obligation under an ERISA plan to honor the subrogation interest of his employer may be held liable under [section 502(a)(3) of ERISA].").

complaint on November 6, 2006, which "clarified its position seeking 'equitable lien by agreement' in light of the 2006 Supreme Court decision and ruling." Longaberger also argued in its summary judgment briefing that "repayment" of funds that have already been disbursed from Kolt's IOLTA was an available remedy under ERISA.

Kolt argues on appeal that Longaberger's claims for monetary relief should be barred by the doctrine of judicial estoppel because arguments Longaberger made in its initial pleadings, and on which the district court relied in issuing a preliminary injunction, were in conflict with those arguments Longaberger later presented in its motion for summary judgment. "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir. 1990); *see also New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne*, 911 F.2d at 1218). The doctrine of judicial estoppel, however, "is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne*, 911 F.2d at 1218 (footnote omitted). Moreover, a court should consider whether a party has gained an unfair advantage from the court's adoption of its earlier inconsistent statement. *New Hampshire*, 532 U.S. at 751.

The issue of judicial estoppel combined with a change in law appears to be an issue of first impression in our circuit. In such cases, "this Court routinely looks to our sister circuits for guidance[.]" *United States v. Houston,* 529 F.3d 743, 762 n.3 (6th Cir. 2008) (Clay, J., dissenting). Several of our sister circuits have held that judicial estoppel is inappropriate when a party is merely changing its position in response to a change in the law. *See Jarrard v. CDI Telecomms., Inc.,* 408 F.3d 905, 915 (7th Cir. 2005)

("Judicial estoppel should not be used to work an injustice, particularly when the defendants' change in position resulted from circumstances outside their control – namely, a change in controlling state law.") (internal citation omitted); *Folio v. City of Clarksburg*, 134 F.3d 1211, 1218 (4th Cir. 1998) (judicial estoppel not invoked where second position was based upon a change in the law); *United States v. Vastola*, 989 F.2d 1318, 1324 (3d Cir. 1993) (same); *Maui Land & Pineapple Co. v. Occidental Chem. Corp.*, 24 F. Supp. 2d 1083, 1086 (D. Haw. 1998) (explaining that the application of judicial estoppel "is inappropriate when a party is merely changing its position in response to a change in the law.") (citing *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984)) (finding no judicial estoppel when a party altered its theory of recovery in response to a change in law); *Seneca Nation of Indians v. New York*, 26 F. Supp. 2d 555, 565-66 (W.D.N.Y. 1998), *aff'd*, 178 F.3d 95 (2d Cir. 1999). Moreover, other courts have found that judicial estoppel bars changes in factual positions and does not extend to inconsistent opinions or legal positions. *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1325 (10th Cir. 1998), *appeal after remand*, 149 F.3d 1191 (10th Cir. 1998) (unpublished table decision); *Ottema v. State ex rel. Wyoming Worker's Comp. Div.*, 968 P.2d 41, 45-46 (Wyo. 1998).

In the present case, there is no evidence of the gamesmanship that the doctrine of judicial estoppel was intended to prevent. Longaberger's arguments, though facially inconsistent, were not an attempt to abuse the judicial process through cynical gamesmanship. Rather, Longaberger altered its theory of recovery in response to the change in the law brought by *Sereboff*. In light of this change in law, Longaberger's motives are not suspicious because, for the reasons stated above, Longaberger could not have argued its prior position without running afoul of controlling Supreme Court case law. *Cf. New Hampshire*, 532 U.S. at 755 (recognizing that judicial estoppel might not be applicable if inconsistent positions result from change in public policy, statutory provisions, or facts) (citations omitted). We therefore adopt the position of our sister circuits and hold that judicial estoppel is not applicable where a party argues an inconsistent position based on a change in controlling law. Accordingly, Kolt's judicial estoppel argument fails.

IV.

Next, Kolt asserts the "rights of reimbursement and subrogation" provision contained in the Longaberger Plan is not self-executing and, thus, did not create an automatic lien on Samuel Billiter's tort recovery.  Moreover, Kolt argues that Longaberger's lien is subordinate to his lien pursuant to Ohio law.  In support of his position, Kolt points to the following Plan language:  "[i]n the event that benefits are to be paid by the Plan for expenses resulting from an injury for which a third party is liable, you or your Dependent(s), as appropriate, shall execute a Subrogation/Right of Reimbursement Agreement, in a form prescribed by the Plan."  Furthermore, Kolt references the following sentence found in the Plan:  "[y]ou or your Dependent(s) or their representative shall execute such documents as may be required to secure the Plan's rights."

Kolt, however, presents these phrases without proper context.  The Plan's plain language unambiguously states that it "automatically [has] a first priority lien upon the proceeds of any recovery by you or your Dependant(s) from such party to the extent of any benefits provided[.]"  Longaberger's Plan does not require a signed reimbursement agreement as a prerequisite before providing the Plan with rights of reimbursement and subrogation.  Rather, such documents shall be executed only "as appropriate" and "as may be required to secure the Plan's rights[.]"

In *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997), we explained, "the plain language of an ERISA plan should be given its literal and natural meaning."  Here, the Plan's terms provide for automatic rights of reimbursement and subrogation, and only require beneficiaries to execute additional documents as necessary to secure the Plan's rights.  Nothing in the record suggests that Longaberger needed these additional documents in the present case.  Accordingly, the district court ruled correctly that Longaberger's Plan was self-executing and that the Plan language provides for an automatic and valid lien on the settlement funds to the extent of the benefits Samuel Billiter received from the Plan.

V.

Finally, Kolt argues, pursuant to Ohio law, that he has an attorney charging lien, which takes priority over Longaberger's lien.  Kolt claims his lien "attached in June and July 2003, when his clients signed retainer agreements with him."  According to Kolt, "Longaberger's lien didn't attach until August 2003 at the earliest, when it began paying [Samuel] Billiter's expenses, and in July 2004 at the latest, when Kolt received the settlement funds from the tortfeasors who injured [Samuel]."  Regardless of whether Longaberger's lien attached in August 2003 or July 2004, Kolt argues that his lien should be given first priority because Ohio liens are prioritized by time and his lien attached at an earlier date.

"A primary purpose of ERISA is to ensure the integrity and primacy of the written plans."  *Isbell*, 139 F.3d at 1072.  ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]"  29 U.S.C. § 1144(a).  *See also Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371, 374 (6th Cir. 1994).  Indeed, "virtually all state law claims relating to an employee benefit plan are preempted by ERISA."  *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991).  Therefore, "only those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted."  *Id.*

Longaberger's Plan provides that "[t]he Plan shall have a first priority claim against any proceeds . . . . [and that] [t]he Plan's rights shall not be subject to reduction under any common fund or similar claims or theories."  In *Ward*, we interpreted a similar plan provision as follows:

> A fair interpretation of this language is that full reimbursement is required without a deduction for attorneys' fees expended to obtain a settlement.  The language of the Plan does not limit or restrict its right to full reimbursement in any manner.  Of course, it would have been preferable for the Plan to state specifically that it does not permit a deduction in reimbursement amounts for attorneys' fees expended to obtain a settlement; nonetheless, when a plan is clear and unambiguous,

> we cannot apply a common-law rule of interpretation but, inste[a]d, must
> give the plain language of a plan its natural meaning.

1999 WL 801532, at *4 (citation omitted).  The same result was reached in *Isbell*, where we reviewed a similar provision and interpreted it to "expressly require[] full reimbursement of the Plan for medical benefits when a beneficiary recovers sufficient damages from a third party tortfeasor. . . .  Thus, Isbell [did] not have an affirmative contractual right under the Plan to a set-off for legal costs attributable to recovering the amount of the medical benefits."  139 F.3d at 1072.  We also noted that "Isbell ha[d] not identified to this Court that application of a set-off under a[n] equitable common fund doctrine would advance any explicit statutory purpose of ERISA.  Rather, we [found] that it would undermine the express terms of the Plan that require full reimbursement for medical benefits."  *Id.*

Here, the Longaberger Plan required full reimbursement of benefits paid when a Plan participant received a judgment or settlement.  The district court was correct to not deduct attorney fees from the amount of reimbursement due to Longaberger.  Thus, we conclude that Kolt is obligated to reimburse the Plan from the funds he received from liable third parties.  Kolt's decision to commingle these funds and not maintain them intact does not prevent enforcement of Longaberger's equitable lien by agreement under the terms of its ERISA plan.

### VI.

For these reasons, we affirm the judgment of the district court.