NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0137n.06

No. 12-3110

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Feb 06, 2013*
DEBORAH S. HUNT, Clerk

JACQUELINE WILSON,                              )
                                               )
        Plaintiff-Appellant,                   )        ON   APPEAL   FROM   THE
                                               )        UNITED STATES DISTRICT
                v.                             )        COURT FOR THE NORTHERN
                                               )        DISTRICT OF OHIO
FORD MOTOR COMPANY,                            )
                                               )
        Defendant-Appellee.                    )
                                               )
_____            )


BEFORE:  MARTIN and GRIFFIN, Circuit Judges; and BECKWITH, Senior District Judge.[*]

        GRIFFIN, Circuit Judge.

        Jacqueline Wilson claims that her employer Ford Motor Company violated Title VII of the

Civil Rights Act of 1964 and Chapter 4112 of the Ohio Revised Code by failing to promote her

because of her race.  The district court granted Ford's motion for summary judgment, holding that

Wilson failed to establish a prima facie case of racial discrimination.  The court further held that,

even assuming she had, there was no evidence that Ford's reason for not promoting her was a pretext

for racial discrimination.  We agree with the rulings of the district court and therefore affirm.

                                            I.

_____

        [*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern
District of Ohio, sitting by designation.

Jacqueline Wilson is an African-American woman who has worked at Ford Motor Company since 1994. She is a member of UAW Local 1250. Local 1250 represents the hourly production workers at Ford's automobile engine manufacturing plant in Brook Park, Ohio. The hourly production workers are divided into "production teams" by assembly line. Each of the thirty-one production teams elects its own "team leader" from within their ranks by majority vote. Employees covet the team leader position; it carries increased pay and responsibilities, as well as the natural prestige and career advancement benefits associated with holding a leadership position.

Until 2007, production workers elected team leaders without Ford's involvement. According to Gordon Stepchuk, Ford's operations manager of the Brook Park plant, that process needed to be changed because "we were getting team leaders in positions that could not basically do the position and were not driving the metrics that [Ford] wanted." As a result, during the 2007 collective bargaining negotiations with Local 1250, Ford negotiated for a provision that would allow it to meaningfully evaluate potential team leaders before they were eligible for election to that position. Ford and Local 1250 ultimately settled on the qualifications procedure described in the "Team Leader & Back-Up Selection Process" set forth in the 2007 Collective Bargaining Agreement ("CBA"). A key element of this procedure is that "the [team leader] evaluation process will be conducted jointly by the ERC[1] and management before an election takes place to confirm the pool of qualified candidates."

---

[1]The "ERC" is the "Employee Resource Coordinator," a union worker who acts as a liaison between the union and management.

In 2009, Wilson was assembling turbochargers on the A-1 line at the Brook Park plant. In late October of that year, ERC Tom Ladikos announced that the first plant-wide elections for team leaders under the 2007 CBA would be held in the first week of December. On December 1, Ladikos sent Stepchuk a list of union employees who wanted to run for team leader positions in the elections which were scheduled for December 2. By that time, only two people had applied for the team leader position on Wilson's A-1 line: Gordon Mocniak, the Caucasian incumbent who had held the position for the previous two years, and Dominick DiPerna. Stepchuk reviewed the qualifications of candidates who applied for all team leader positions. He qualified, among others, six African-American candidates (who were ultimately elected to the post), and disqualified only three: DiPerna, George Lontor, and Edith Booth. DiPerna, Lontor, and Booth are all Caucasian.

On December 2, team leader elections were held throughout the plant. The A-1 line did not have an election that day because the union objected to DiPerna's disqualification. For the next two days, Stepchuk and the union negotiated over whether DiPerna was properly disqualified. On December 4, Stepchuk decided DiPerna was not qualified based upon his work record and lack of leadership skills. Thus, Stepchuk considered Mocniak's candidacy unopposed. Because no one else had timely applied for the team leader position on the A-1 line, and Mocniak was the only person who had been jointly qualified under the 2007 CBA, Stepchuk decided that Mocniak was the team leader for the A-1 line.

However, on December 7, over Ford's objection, the union unilaterally held an election for the A-1 team leader, including Wilson on the ballot without consulting Ford about her qualifications.

After an initial tie vote, Wilson outpolled Mocniak. Thereafter, Stepchuk refused to honor the election results because Ford and the union had not jointly qualified Wilson before the election. After a failed attempt to negotiate a co-team leader arrangement, Ford insisted that Mocniak was the A-1 team leader.

Wilson then filed this lawsuit, alleging that she was not promoted to team leader because of her race, in violation of Title VII and Ohio Revised Code Chapter 4112.[2] The district court granted Ford's motion for summary judgment because it found that Wilson failed to establish a prima facie case of racial discrimination.[3] The court determined that she was not qualified for the team leader position because she failed to obtain Ford's preelection certification as required under the 2007 CBA and that she was not similarly situated to Mocniak who had obtained that necessary certification. The court further held that, even if Wilson had established a prima facie case, she offered no evidence to rebut Ford's legitimate, nondiscriminatory reason for not promoting her. Wilson timely appealed.

II.

A.

---

[2]Dominick DiPerna joined Wilson's suit, alleging that Ford retaliated against him for supporting Wilson's race discrimination allegations. The district court granted Ford's motion for summary judgment on DiPerna's retaliation claim because it found no evidence that Ford knew of DiPerna's support of Wilson's claims. Although DiPerna appealed with Wilson, he withdrew that appeal when Wilson filed her opening brief. Accordingly, we do not address DiPerna's retaliation claims.

[3]The district court assumed, as do we, that Section 301 of the Labor Management Relations Act does not preempt or preclude Wilson's race discrimination claims.

We review de novo a district court's grant of summary judgment. *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether the movant has met this burden, we view the evidence in the light most favorable to the nonmoving party. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

Wilson alleges Ford failed to promote her to the A-1 team leader position on the basis of race[4] in violation of Title VII and Ohio Revised Code Chapter 4112. The evidentiary standards for Title VII discrimination claims are equally applicable to analogous claims under Chapter 4112 of the Ohio Revised Code. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020 n.2 (6th Cir. 2000). "[T]o establish a Title VII employment discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003). Since Wilson has offered only circumstantial evidence in this case, we review her claims under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–56 (1981).

---

[4]We reject Wilson's attempt to add allegations of gender discrimination on appeal. Wilson did not plead any gender-based claims in her complaint and the parties' summary judgment briefs addressed only race-based claims.

Under the *McDonnell Douglas* framework, a plaintiff alleging race discrimination has the burden of proving a prima facie case of race discrimination by a preponderance of the evidence. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000). After establishing a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* If the defendant satisfies this burden, the plaintiff must then show that the defendant's reason is a pretext for discrimination. *Id.*

To establish a prima facie case of racial discrimination based on a failure to promote, a plaintiff must show that: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the promotion at the time plaintiff's application was denied. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812–13 (6th Cir. 2011). Only the second and fourth elements are at issue in this appeal.

B.

Beginning with the second element, for Wilson to demonstrate that she is qualified for the promotion, she must establish that she met Ford's objective qualifications for the team leader position. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009); *see also Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 516 (6th Cir. 2003) (in determining whether a plaintiff has satisfied the qualification prong of the prima facie test, the inquiry focuses on objective criteria). Wilson argues this element is satisfied because Stepchuk testified that she was qualified for the job. She also argues the prescreening requirements of the 2007 CBA were satisfied because Ford area

manager Joe Destro, acting on behalf of Ford management, consented to her candidacy after Stepchuk disqualified DiPerna, but before her December 7 election. We disagree and find that Wilson was not objectively qualified for the team leader promotion.

Wilson's union and Ford agreed in the "Team Leader & Back-Up Selection Process" of the 2007 CBA, essentially the "job posting" for the team leader position, that an objective requirement for the promotion was that a team leader candidate must be jointly evaluated and confirmed to run for the position *before* elections occur. Wilson does not question the propriety of this requirement, nor do we. *See Browning v. Dep't of Army*, 436 F.3d 692, 698 (6th Cir. 2006) ("Questioning the [employer's] hiring criteria is not within the province of this court . . . ."). Here, Wilson cannot genuinely dispute that Ford and the union did not jointly evaluate her candidacy before her December 7 election. Although Stepchuck testified that Wilson could perform the duties and handle the responsibilities of a team leader, he also stated that Wilson was not prescreened according to the jointly adopted, plain and unambiguous terms of the 2007 CBA. In other words, whatever her abilities, she did not meet Ford's objective qualifications for the team leader position. Wilson's failure to satisfy Ford's—and her own union's—objective requirements for the team leader post means she was not qualified for the promotion, even though that requirement does not directly relate to her ability to perform the job. *See Johnson v. England*, 350 F. App'x 314, 317–18 (11th Cir. 2009) (per curiam) (federal employee was not qualified for promotion from GS-9 to a GS-12 pay grade because she had not spent at least 52 weeks in GS-11 position as objective promotion criteria required); *Bean v. United Parcel Service*, CA-04-2213-DKC, 2005 WL 1995442, *8 (D. Md.

Aug. 17, 2005) (employee not qualified for a promotion because he knew of, but did not comply with, the employer's procedural requirements to be considered for a promotion), *aff'd*, 185 F. App'x 259 (4th Cir. 2006) (per curiam); *see also Campbell v. Univ. of Akron*, 211 F. App'x 333, 348 (6th Cir. 2006) (employee failed to demonstrate that he was qualified for a promotion where his record, on its face, showed that he did not satisfy an objective requirement in job posting). Further, even assuming Destro approved Wilson's candidacy prior to her election, it remains undisputed that plant operations manager Stepchuk did not, and Destro, a lesser-manager, had no authority to act on behalf of Ford's management team at Brook Park. Accordingly, Wilson has not established the second element.

C.

Wilson also has not established the fourth element because she was not similarly situated to Mocniak. Here, we conduct a "general weighing" of the comparative qualifications of Wilson and Mocniak. *Provenzano*, 663 F.3d at 813; *see also White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 243 (6th Cir. 2005) (a court must "conduct an independent review of the relative qualifications of the plaintiff and the person selected for the position based on the evidence presented in order to determine whether the plaintiff has satisfied the fourth prong of her *prima facie* burden"). The analysis on this element is straightforward: Mocniak applied for the team leader position before the election and was prequalified by Ford; neither is true for Wilson. Therefore, Wilson was not similarly situated to Mocniak. Wilson attempts to avoid this conclusion by arguing that, like her, Stepchuk did not review Mocniak's qualifications prior to his election. In support, she offers

Stepchuk's admission that he did not know whether Mocniak was qualified for the team leader position before he signed up for the December elections. This admission does not help Wilson—there would have been no reason for Stepchuk to review Mocniak's qualifications *before* he decided to run for team leader. Once Mocniak applied, however, it is undisputed that Stepchuk and his management team reviewed and approved his candidacy before his election. The same cannot be said of Wilson. Therefore, Wilson has not established that she was similarly situated to Mocniak. Because she offers insufficient proof on the second and fourth elements, we conclude that Wilson has failed to establish a prima facie case of racial discrimination.

### D.

Further, assuming arguendo that Wilson established a prima facie case, the record contains insufficient evidence to create a genuine issue of material fact on whether Ford's reason for denying Wilson the team leader position—her failure to obtain preelection certification under the 2007 CBA—was a pretext for intentional race discrimination. To establish pretext,

> [t]he plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendants intentionally discriminated against him. The jury may not reject an employer's explanation unless there is a sufficient basis *in the evidence* for doing so. If the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous.

*Upshaw*, 576 F.3d at 586 (internal quotation marks, brackets, and citations omitted). A plaintiff generally establishes pretext by showing that the defendant's reason (1) has no basis in fact, (2) did

not actually motivate the challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Dews*, 231 F.3d at 1021.

1.

Wilson argues that a reasonable jury could reject Ford's explanation as a pretext because it selectively enforced vague CBA terms in denying her the team leader promotion. In this regard, Wilson criticizes Ford's reliance on paragraph seven of the "Team Leader & Back Up Selection Process," which provides:

> The evaluation process will be conducted jointly by the ERC and management before an election takes place to confirm the pool of qualified candidates. The evaluation criteria for the qualifications outlined above will be developed by the joint parties.

She maintains Ford's reliance on her failure to follow the above procedure shows pretext because the "evaluation criteria" is an illusory agreement to agree and the "evaluation process" contains no specifics on who from each side will conduct the joint review or what type of review is required. In other words, Ford's insistence that she failed to comply with open-ended CBA provisions shows that it denied her the team leader position because she was African-American.

This argument does not create a genuine issue of material fact regarding pretext. Although paragraph seven does not contain specific details regarding the joint qualification process, that review, whatever its precise details, must occur "*before* an election takes place." Here, even assuming the union could unilaterally hold a special election for team leader on the A-1 line on December 7 after the December 2 plant-wide general election, it remains undisputed that Stepchuk did not review Wilson's qualifications *before* her election. The record contains no inference that

Ford selectively enforced the prequalification requirement. To the contrary, Ford consistently enforced that provision by promoting only prequalified candidates to team leader positions, and Wilson offers no proof that anyone was promoted to team leader without being prequalifed by Ford. She also has no response to the reality that Ford prequalified six African-Americans who were elected and promoted as team leaders, an undisputed fact that critically diminishes her pretext claim. *See Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1179 (10th Cir. 2000) (plaintiff's pretext argument undermined by fact that defendant hired twelve African-American applicants to same position). Accordingly, a reasonable jury could not conclude that Ford's consistent enforcement of a specifically negotiated, plain and unambiguous requirement that it review team leader candidates before their election is a pretext for intentional racial discrimination.

2.

Wilson next argues that a reasonable jury could find pretext because there is "nothing" in the 2007 CBA that prevents the union from holding team leader elections anytime it wants in December or that elections can be repeated if Ford concludes they were procedurally flawed. Relatedly, she posits that "nothing" prevented Ford from delaying the December 7 election so that it could review her candidacy before the election. As a result, since "nothing" prevented Ford from holding another election in which it could have prequalified Wilson, that it did not shows pretext.

Ford's reluctance to abandon its rights under the new team leader selection process does not show pretext. Ford negotiated with the union on the new team leader selection process to address its legitimate concerns with unqualified employees being elected as team leaders. Each side

followed the new procedure during the December 2009 elections, the first time team leader elections were held under the 2007 CBA. Although Wilson does not agree with Ford's honest belief of its rights under the CBA, that Ford could have interpreted the agreement differently or waived its rights and allowed her to have the promotion does not show pretext. *Upshaw*, 576 F.3d at 586.

### 3.

There is additional evidence why a reasonable jury could not reject Ford's explanation as a pretext for intentional race discrimination—Ford offered to promote Wilson to a co-team leader position within forty-eight hours of the disputed election. Two days after Wilson's election, Ford proposed to resolve the dispute over whether the team leader selection process was followed by promoting both Mocniak and Wilson as co-team leaders, each receiving the hourly rate increase accompanying the position. The union declined the offer, and Ford reverted to its position that Wilson was not eligible for promotion because she was not prescreened. Wilson's use of Ford's offer of compromise as proof of wrongdoing is unpersuasive because Ford extended that offer *before* Wilson ever accused Ford of racial discrimination. If racial animus motivated Ford's promotion decision, it would not have immediately offered Wilson a co-team leader arrangement. And, but for her union's objection, Wilson would have been working as a co-team leader, with increased pay and prestige. Because Ford offered Wilson and Mocniak the same position, we conclude that no reasonable jury could conclude that racial discrimination was the "real reason" Ford did not promote her. *See Upshaw*, 576 F.3d at 587 ("[A] reason cannot be proved to be 'a pretext for discrimination'

unless it is shown *both* that the reason was false, *and* that discrimination was the real reason"

(quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993))).

III.

For these reasons, we affirm the judgment of the district court.