EDITH H. JONES, Circuit Judge, joined by STEWART, Chief Judge, and JOLLY, DAVIS, SMITH, CLEMENT, OWEN, SOUTHWICK, GRAVES, and HIGGINSON, Circuit Judges:
ERISA § 502(a)(3)(B) authorizes actions by fiduciaries “... to obtain other appropriate equitable relief ... to enforce ... the terms of the [ERISA] plan.” 29 U.S.C. § 1132(a)(3)(B). The question this court deems enbancworthy is whether ACS Recovery Services, Inc., the administrator, and FK Industries, Inc., the sponsor (collectively, “ACS”), of the ERISA plan (“Plan”) that covered employee Larry Griffin, can sue Griffin, Griffin’s Special Needs Trust, or his ex-wife Judith, for reimbursement of medical expenses incurred by the Plan after Griffin received a tort settlement for his injuries. To what extent, in other words, does ACS’s suit seek “appropriate equitable relief’ to enforce the Plan’s reimbursement provision? Parting company with this court’s panel decision, we hold that ACS may recover from the Special Needs Trust the costs the Plan bore on Larry’s behalf: the Trust is a proper ERISA defendant; the Trust received funds directly traceable to Larry Griffin’s tort recovery; and the Plan held a pre-existing equitable lien by agreement on the proceeds of the recovery after the *521 Plan paid Griffin’s medical bills. Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). Under the circumstances of this case, however, we need not rule on whether ACS can recover from Larry, and ACS did not offer evidence to sustain a judgment against Judith. The district court judgment to the contrary is reversed in part, affirmed in part, and remanded.
BACKGROUND
While Griffin worked for FK Industries, he participated in the company’s ERISA welfare benefit plan. The Plan paid over $50,000 in medical expenses for his treatment following a serious automobile accident in 2006. Larry and Judith sued Ashley E. Smith and J-Co Production Management, Inc., the company responsible for the accident, and reached a settlement to pay “cash and periodic payments with a present value sum” just over $294,000.
At the time of the settlement, the Plan provided it “will have a first lien upon any recovery, whether by settlement, judgment, arbitration or mediation” to repay the medical expenses, and it required Larry not to take action that might prejudice the Plan’s right to reimbursement. ACS had notified Larry’s attorney of these provisions shortly after he filed suit. Rather than help Larry comply with the Plan, his attorney devised an artful attempt to insulate the settlement proceeds from the reimbursement provision. His attorney admitted that he structured the settlement “in an effort to legally avoid any equitable lien asserted by the Group Medical Plan.... ” Accordingly, the settlement first segregated money for attorneys’ fees, some additional medical expenses, and for Judith Griffin pursuant to the couple’s divorce settlement. The remaining funds (having a “present sum value” of about $148,000) were paid by SAFECO, the defendant’s insurer, to Hartford CEBSCO, which was authorized to purchase an annuity from Hartford Life and therewith to make monthly payments of $843.42 for twenty years to a statutory Special Needs Trust,[1] whose trustee is Willie Griffin, Larry’s brother. The Trust is authorized to make monthly payments for Larry’s benefit.
The settlement documents reflect Larry’s approval of this arrangement. On October 24, 2008, the state court approved creating a tax-qualified Special Needs Trust pursuant to Texas Property Code § 142.007 based on the understanding that Larry is “incapacitated” under state law and disabled for federal Social Security purposes. That same day, the state court entered an Order Approving Settlement and of Dismissal (“Order”), signed by Larry and a guardian ad litem (among others), that delineated the exact payments to be made to each party including the Special Needs Trust.
The Order referenced the parties’ contemporaneously executed Compromise Settlement Agreement (“Agreement”), designated as being by and between “Larry Griffin and Judith Griffin as Plaintiffs ...,” and Larry signed it as well. Both the guardian ad litem and the parties’ attorneys signed the Agreement only “as to form.” This Agreement exchanged the plaintiffs’ release of claims for (in pertinent part) the defendants’ agreement to pay the Larry Griffin 142 Special Needs Trust (“Trust”) certain monthly payments “through annuity issuer, Hartford Life Insurance Company.” The Griffins and the Trust further agreed to an assignment of the defendants’ liability to make the periodic payments to Hartford CEBSCO, such *522 that Hartford’s obligation to make the periodic payments “shall be no greater” than that of the defendants. Plaintiffs further consented to holding Hartford to be the . “sole obligor” respecting the obligation. Hartford, as “sole owner of the annuity policy,” was to issue the monthly payments to the Trust, c/o Willie Griffin, Trustee. Finally, the plaintiffs warranted in the Agreement that “no part of the claim” has been assigned or transferred to any person or entity, and that not only have all medical costs been paid, but “any hens pertaining to said care have been released or satisfied.”
ACS and FKI, the Plan fiduciaries, were denied reimbursement by the design and intent of this settlement. They sued Larry Griffin, Judith Griffin, the Trust, and Willie Griffin as Trustee under ERISA § 502(a)(3)(B). Among other claims for relief, the fiduciaries sought a constructive trust upon “no less than $50,076.19 in funds intended to be paid to or received by the Defendants from any recovery made as compensation for injuries caused by the acts of a third party,”[2] and they requested that the defendants be enjoined from interfering with the Plan’s right of reimbursement.
The district court, approving a magistrate judge’s report and recommendation, rejected the fiduciaries’ claims for summary judgment and granted Larry Griffin’s, Willie Griffin’s, and the Trust’s cross motions.[3] A panel of this court expanded on the trial court rulings, but the fundamental analysis supporting the appellees rests on the following propositions. First, the Plan’s claim seeks legal, not equitable relief as required by § 502(a)(3)(B), because Larry Griffin has neither possession nor control of the settlement funds now held in the annuity. Any judgment against Larry Griffin personally would be for money damages rather than for the enforcement of a constructive trust over the settlement proceeds. Likewise, the Trust cannot be sued for equitable relief for several reasons. It has no possession or control over the annuity, which Hartford owns. Because Larry has no control over the Trust, the Trust cannot be liable as his agent. Finally, since Larry lacked “even fleeting” possession or control over the settlement money that purchased the annuity that funds the Trust, equitable relief is pretermitted against the Trust. This reasoning purports to be compelled by the Supreme Court’s decision in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), and this court’s decision in Bombardier Aerospace Emp. Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348 (5th Cir.2003). Following an unfavorable appellate decision, ACS obtained en banc review.
DISCUSSION
1. Standard of Review
The panel decision adhered to our circuit precedent in concluding that ACS’s failure to support a claim for equitable relief necessitated dismissal for lack of *523 jurisdiction. See, e.g., Bauhaus USA Inc. v. Copeland, 292 F.3d 439, 445 (5th Cir.2002) (affirming the district court’s dismissal for lack of subject matter jurisdiction because appellants failed to state a valid claim under § 502(a)(3)). Whatever the origin of this jurisdiction-based reasoning,[4] it is inconsistent with Supreme Court precedent and the majority of sister circuits, for which the failure to state a claim cognizable under federal law is distinct from holding that a court lacks subject matter jurisdiction. The Supreme Court has long held that “the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, ie., the courts’ statutory or constitutional power to adjudicate the case.” Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 89, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998). Subject matter jurisdiction is not implicated unless the claim is “so insubstantial, implausible, foreclosed by pri- or decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy.” Oneida Indian Nation of N.Y. v. Cnty. of Oneida, 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974); see also Adar v. Smith, 639 F.3d 146, 150-51 (5th Cir.2011) (en banc), cert. denied, — U.S. —, 132 S.Ct. 400, 181 L.Ed.2d 257 (2011). Consistent with these principles, at least five other circuits have held that whether a claim for equitable relief under ERISA § 502(a)(3) has been stated is within federal courts’ jurisdiction irrespective of the claim’s ultimate merit.[5] Reinforcing this conclusion is that ERISA grants federal courts exclusive jurisdiction separate and apart from its articulation of causes of action. See 29 U.S.C. § 1132(e).
We align with the majority rule and frame this appeal as requiring a decision whether the Plan stated a claim for equitable relief under ERISA § 502(a)(3). The interrelated issues, raised because the parties offered evidence outside the pleadings, are whether there was no genuine, material fact issue and the Plan or its adversaries were entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56.
2. Section 502(a)(3).
Guided by Supreme Court decisions that have systematically refined the scope of “appropriate equitable relief,” the case law interpreting § 502(a)(3) has evolved over twenty years. In Mertens v. Hewitt Assocs., 508 U.S. 248, 255, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993), the Court held that “appropriate equitable relief’ allowed plaintiffs to seek “a remedy traditionally viewed as ‘equitable.’ ” In Knudson, supra, the Court undertook to differentiate between legal and equitable relief. When Janette Knudson was seriously injured in a car crash, Great-West paid substantial medical bills under an ERISA plan that authorized the company to be reimbursed from any recovery she received from a third party. Id. at 207, 122 S.Ct. at 711. Knudson won a favor *524 able judgment, and the tortfeasor deposited her award directly into a special needs trust with Knudson as beneficiary and her husband as the trustee.
The Court ruled that Great-West could not recover “restitution” from the Knudsons personally under § 502(a)(3)(B) because this was tantamount to legal relief for breach of contract. The majority held that whether restitution is a legal or equitable remedy depends on the basis for the plaintiffs claim. Id. at 213, 122 S.Ct. at 714. The Court stated:
[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant’s possession. See 1 Dobbs § 4.3(1), at 587-588; Restatement of Restitution, supra, § 160, Comment a, at 641-642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; § 3.7, p. 262 (1978). A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where “the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiffs] claim is only that of a general creditor,” and the plaintiff “cannot enforce a constructive trust or an equitable lien upon other property of the [defendant].” Restatement of Restitution, supra, § 215, Comment a, at 867. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant’s possession.
Id. at 213-14, 122 S.Ct. at 714-15. As the settlement funds were no longer in Knudson’s possession, Great-West was seeking “some funds,” not necessarily the particular funds obtained from the third party. Significantly, the Court declined to decide whether the ERISA plan might have claimed equitable relief from either the special needs trust or the Knudsons’ attorney. Id. at 220, 122 S.Ct. at 718. Justice Ginsburg, in dissent, observed that under the majority’s reasoning a “constructive trust claim would lie; hence, the outcome of this case would be different if Great-West had sued the trustee of the Special Needs Trust, who has ‘possession’ of the requested funds, instead of the Knudsons, who do not.” Id. at 225, 122 S.Ct. at 721 (Ginsburg, J., dissenting).
After Knudson, this court decided Bombardier, supra, and held that an ERISA plan was pursuing “appropriate equitable relief’ against a law firm holding funds in its trust account on behalf of a client. The client-beneficiary owed his plan, according to its reimbursement terms, over $13,000 for medical expenses paid on his behalf following a car accident. His settlement with the tortfeasor was deposited in the firm’s trust account. The plan sued the law firm and was met with two defenses: (1) the firm, neither a fiduciary nor a signatory to the plan, was not a proper defendant under ERISA, and (2) a constructive trust was improper because the funds were not in the possession of the beneficiary himself. Id. at 351. This court rejected both defenses to liability. First, we held that the law firm was a proper party pursuant to the Supreme Court’s conclusions that § 502(a)(3) “admits of no limit (aside from the ‘appropriate equitable relief caveat’ ...) on the universe of possible defendants,” and therefore “authorizes a cause of action against a non-fiduciary, non-‘party in interest’ ... [who] holds disputed settlement *525 funds on behalf of a plan-participant____” Id. at 352-53 (quoting Harris Trust & Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 244-46, 120 S.Ct. 2180, 2187, 147 L.Ed.2d 187 (2000) (emphasis in original)). Second, relying on the holding of Knudson while distinguishing it factually, this court held that the plan indeed sought to recover (1) specifically identifiable funds that (2) were in the constructive possession and the legal control of the participant but (3) belonged in good conscience to the plan. See id. at 355-58. This court inferred its three-part inquiry from Knudson. The funds were in the “constructive possession and control” of the client despite the firm’s claimed contingency fee arrangement because the client/beneficiary’s obligation to the plan predated any agreement with the law firm and thus precluded him “from contracting away ... that which he did not own himself, namely, the [money] that rightfully belonged to the Plan.” Id. at 357.
Three years after Bombardier, the Supreme Court decided Sereboff v. Mid Atlantic Med. Servs., Inc., 547 U.S. 356, 126 5.Ct. 1869, 164 L.Ed.2d 612 (2006). In the wake of Knudson, a circuit split had developed about whether an ERISA plan seeking to enforce benefits reimbursement provisions could invoke “equitable relief’ under § 502(a)(3)(B). See Admin. Comm. for WalMart v. Horton, 513 F.3d 1223, 1226 (11th Cir.2008) (discussing circuit split). The Court unanimously agreed in Sereboff that properly framed relief could be characterized as equitable.[6] The Sereboffs received medical benefits from Mid Atlantic following a car crash under an ERISA plan requiring them to reimburse Mid Atlantic for recoveries from third parties. Sereboff, 547 U.S. at 360, 126 S.Ct. at 1872. When they declined to reimburse Mid Atlantic for their settlement with the tortfeasors, the Sereboffs placed the disputed funds in an investment account while the Mid Atlantic litigation was pending. Id. at 360, 126 S.Ct. at 1873. Mid Atlantic sued for breach of contract and for imposition of a constructive trust and equitable lien on its portion of the settlement. Summarizing Knudson, the Court first pointed out that a constructive trust or equitable lien can be imposed on “ ‘particular funds or property in the defendant’s possession.’ ” Id. at 362, 126 S.Ct. at 1874 (quoting Knudson, 534 U.S. at 213, 122 S.Ct. at 708). Unlike the Knudsons, the Sereboffs possessed the disputed funds in their investment account. Id. at 362-63, 126 S.Ct. at 1874. Mid Atlantic accordingly sought an equitable remedy.
Mid Atlantic’s additional burden, however, was to prove that the basis for its claim was equitable. See id. at 362, 126 S.Ct. at 1874 (whether the remedy “is legal or equitable depends on ‘the basis for [the plaintiffs] claim’ and the nature of the underlying remedies sought”) (quoting Knudson, 534 U.S. at 213, 122 S.Ct. at 708). The Court ascertained that Mid Atlantic’s claim was equitable because it sought to enforce an “equitable lien by agreement.” Equitable liens by agreement are described in Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530 (1914), where Justice Holmes wrote that they arise when an agreement identifies a specific fund, distinct from the obligor’s general assets, and identifies a particular portion of the fund that is owed to a counter party. See Sereboff, 547 U.S. at 364, 126 S.Ct. at 1875. That the agreement is made before the fund comes into existence is of no moment, Sereboff reiterated. Id. at 366, 126 S.Ct. *526 at 1876. Based on Barnes, Mid Atlantic could rely on the “familiar rule of equity,” which “allowed [it] to ‘follow’ a portion of the recovery ‘into the [Sereboffs’] hands’ ‘as soon as [the settlement fund] was identified,’ and impose on that portion a constructive trust or equitable lien.” Id. at 363-64, 126 S.Ct. at 1875 (quoting Barnes, 232 U.S. at 123, 34 S.Ct. 276).
Particularly significant here is the Court’s rejection of the Sereboffs’ argument that Mid Atlantic’s claim was not equitable because equitable restitution requires a strict tracing of the tainted assets. First, the Court distinguished equitable restitution from equitable liens by agreement and affirmed that Barnes places no similar tracing requirement on the latter type of claim. The Court also refused to hold that Knudson crafted a new tracing requirement because Knudson described only “in general terms” a fiduciary’s right to recover equitable restitution, and “[t]here was no need in Knudson to catalog all the circumstances in which equitable liens were available in equity....” Id. at 365, 126 S.Ct. at 1876. Neither Knudson nor Sereboff, in other words, exhausts the universe of “appropriate equitable relief,” so long as both the claim and the relief sought sound in equity.
Following these decisions, other circuits have readily enforced ERISA plan reimbursement terms against third parties holding tort settlements achieved by plan beneficiaries. Constructive trusts have been imposed to enforce a plan’s equitable lien by agreement on settlement proceeds held by a beneficiary’s tort lawyer, Longaberger v. Kolt, 586 F.3d 459 (6th Cir.2009); by a trustee of his wife’s special needs trust, Admin. Comm. of Wal-Mart Stores, Inc. Assocs.’ Health & Welfare Plan v. Shank, 500 F.3d 834 (8th Cir.2007); and by a conservator acting as a trustee for a special needs trust. Admin. Comm, for Wal-Mart Stores, Inc. Assocs.’ Health & Welfare Plan v. Horton, 513 F.3d 1223 (11th Cir.2008).[7] In each of these cases, the courts held that, according to Knudson and Sereboff, an equitable lien for reimbursement attached to settlement proceeds as soon as a settlement fund arose from the injuries requiring plan payments. See, e.g. Longaberger, 586 F.3d at 467. The discussion in Horton, supra, quotes, inter alia, the Restatement of Restitution:
Where property is held by one person upon a constructive trust for another, and the former transfers the property to a third person who is not a bona fide purchaser, the interest of the beneficiary is not cut off. In such a case, he can maintain a suit in equity to recover the property from the third person, at least if his remedies at law are not adequate.
Id. at 1228 (quoting Restatement of Restitution § 160 cmt. g (1937)). Horton’s salient conclusion is:
In the instant case, the Administrative Committee properly seeks equitable restitution of a specifically identifiable fund in possession of a defendant. As required by Knudson, the [Plan] asserts title and right to possession of particular property that is in the hands of Mrs. *527 Werber in her capacity as Joshua’s conservator. The money Mrs. Werber holds in trust has been identified as belonging in good conscience to the [Plan] by virtue of the Plan’s terms, and the money can clearly be traced to a particular fund in the defendant’s possession. The fact that Mrs. Werber holds the funds as a third party does not defeat the [Plan’s] claim. Under Knudson, Sereboff, and the other authorities cited above, the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable res that can be restored to its rightful recipient.
Id. at 1228-29 (emphasis added).
Most analogous to the present case is Shank, which, in one sentence, dispatched a trustee’s defense that the plan’s suit to place a constructive trust on his injured wife’s special needs trust sought legal, not equitable relief. The court held:
The [plan’s] claim meets Serebojf’s requirements for equitable restitution: it seeks (1) the specific funds it is owed under the terms of the plan — i.e., the money it paid to cover Shank’s medical expenses; (2) from a specifically identifiable fund that is distinct from the Shanks’ general assets — i.e., the special needs trust; and (3) that is controlled by defendant James Shank, the trustee.
Shank, 500 F.3d at 836. Analogous to Kundson and this case, Mrs. Shank did not have “possession” of the funds, yet the constructive trust claim was enforceable against the special needs trust.
Longaberger instructs on the lack of a tracing requirement in connection with the enforcement of an equitable lien by agreement. There, the ERISA plan sued a beneficiary and his lawyer for benefits reimbursement after a settlement had been reached with the tortfeasor.[8] Kolt, the attorney, moved for summary judgment on the basis that the plan sought legal, not equitable relief because the settlement funds had already been disbursed from his Interest on Lawyer Trust Accounts (IOLTA) account before the plan filed suit. The Sixth Circuit affirmed summary judgment for the plan and against the attorney. The plan’s equitable lien attached when the settlement funds were identified. As to tracing, the Court noted:
The fact that Kolt chose to disregard Longaberger’s first priority lien and commingle the settlement funds does not defeat Longaberger’s claim for equitable relief, because under Sereboff, Longaberger was free to follow a portion of the settlement funds into Kolt’s hands.
Longaberger, 586 F.3d at 469 (emphasis added).
Longaberger is reminiscent of Bombardier’s holding, even before Sereboff, that “[t]his pre-existing reimbursement obligation to the [p]lan precluded [the beneficiary] from contracting away to the law firm that which he did not own himself, namely, the right to all or any portion of the [sum] that rightfully belonged to the [p]lan.” Bombardier, 354 F.3d at 357. When the beneficiary accepted a settlement subject to the plan’s prior lien, he could not transfer the proceeds, in any of the above cases, free and clear to a third party. Moreover, the third party’s liability even after the disposition of tainted proceeds was held remediable in equity by a constructive trust because no strict tracing requirement existed in this situation.
From Knudson, Sereboff, and applicable circuit case law, the following conclusions seem inescapable. Larry Griffin *528 had a pre-existing agreement with ACS to reimburse the Plan for its payments on his behalf in the event of a third-party recovery. When Larry Griffin signed the Order approving settlement and the Agreement awarding compensation for his injuries, an equitable lien by agreement arose for the benefit of ACS. Griffin’s right to receive money from the settlement was subordinate to the Plan’s lien. Both the annuity and its monthly payments to the Trust, which accrue to Larry’s benefit, are an identifiable fund to which the Plan’s lien attaches. The money belongs “in good conscience” to the Plan to the extent of the costs it incurred. Under § 502(a)(3)(B), appropriate equitable relief demands the imposition of a constructive trust on the proceeds of the annuity as they accrue to the Special Needs Trust.[9] ACS should be awarded this relief from the Trust and Willie Griffin, Trustee.[10]
As to Larry’s receipt of benefits from the Special Needs Trust, the situation is less clear. Confronted with an ERISA plan beneficiary who had received, but dissipated or commingled, disability benefits for which the plan claimed a setoff, the Seventh Circuit authorized the imposition of a constructive trust. Gutta v. Standard Select Trust Ins. Plans, 530 F.3d 614, 621 (7th Cir.2008). The court relied on Sere-boffin holding that Gutta and the plan had formed an equitable lien by agreement, and because strict tracing is not required, a remedial trust could be imposed notwithstanding Gutta’s dissipation or commingling of the fund. Id. at 620-21; see also Cusson v. Liberty Life Assurance Co., 592 F.3d 215, 231 (1st Cir.2010); Funk v. CIGNA Grp. Ins., 648 F.3d 182, 194-95 (3d Cir.2011). On the other hand, the facts in Knudson so closely parallel those of the instant case as to render a different outcome, even an outcome predicated on Sereboff arguable. We do not reach a decision on Larry’s liability to the Plan, because imposing a constructive trust on his Trust affects exactly the same proceeds and effects the same result as would an equitable remedy against Larry.
ACS must fail in its attempt to recover from Judith Griffin, however, because the fiduciaries did not demonstrate that the money she received from the settlement was attributable to Larry’s injuries rather than her personal claims arising from the accident.
Several objections have been made against fastening equitable relief on the Trust. The principal one is that because the Trust receives proceeds from an annuity purchased by Hartford with the settlement fund, Larry lacks possession or control of the settlement money and stands in the same position as the Knudsons. This reasoning is flawed. First, unlike in Knudson, the Trust is a defendant. The Knudson majority expressly reserved this *529 point. As Justice Ginsburg’s dissent forecast, supra at 225, 122 S.Ct. at 721, this distinction makes a difference, because the Trust administers proceeds directly traceable to the settlement.
Another objection is that Bombardier prescribed a three part “test” in which the beneficiary’s possession and control are required at the time of suit. To the extent Bombardier embraced such a test, it must yield to the higher subsequent authority of Sereboff, which states that the funds only need to be in the possession of the defendant. Serebojf, 547 U.S. at 362, 126 S.Ct. at 1874.[11] In any event, the Court’s Bombardier description of the factors that led to the ERISA plan’s successful suit for equitable relief may be viewed as neither a prescription for liability in all § 502(a)(3)(B) cases nor necessarily a proscription of other varieties of equitable claims. Bombardier’s result is harmonious with Sereboff and post-Sereboff case law. See, e.g., Funk, supra; Cusson, supra; Gutta, supra; Longaberger, supra; but cf. CGI Tech. & Solutions Inc. v. Rose, 683 F.3d 1113, 1118 (9th Cir.2012) (holding that the ERISA plan was not entitled to funds held in a trust by the beneficiary’s attorney), petition for cert, filed (Aug. 24, 2012) (No. 12-240).
Additionally, the bolder assertion that Larry “never” had possession or control of the settlement fund ignores the instant facts and the rationale of Sereboff. Without Larry’s injury, there would have been no Plan payments for his medical costs nor a settlement. The settlement documents he signed fully explain his assent to the disposition of the fund. He had at least constructive possession and control of the fund to facilitate the settlement.[12] He would not have agreed to indemnify the settling parties and Hartford for unpaid medical bills had he expected to receive nothing from the settlement. Griffin’s attempt to divorce himself from the origin of the fund and its disposition is no more persuasive than if he had directed the money to a close relative. But the more important point, as Bombardier put it, is that he could not give away that which he did not possess. Sereboff authorized resort to the beneficiaries’ segregated account only after the Supreme Court concluded the plan had an equitable lien by agreement that attached at the fund’s creation. So, here, a holding that no equitable lien by agreement arose would blink reality and elevate form over substance.
A final objection against holding the Trust liable as the recipient of the settlement fund or its proceeds is that statutory special needs trusts are “special.” They are vehicles for the support and care of disabled individuals whose primary purpose is to maintain the beneficiaries’ eligibility for public benefits like Medicaid. See 1 Stuart Zimring, Rebecca C. Morgan, Bradley J. Frigon & Craig C. Reaves, Fundamentals of Special Needs Trusts, §§ 1.04, 1.05 (Matthew Bender 2012). Texas, like many states, authorizes such trusts. Tex. Prop.Code Ann. § 142.005. Nevertheless, although favoring such trusts in certain respects, see 42 U.S.C. § 1396p(d)(4)(A) (providing that assets held in a special needs trust do not affect an individual’s eligibility for Medicaid), Congress did not exclude them as potential defendants from the broad reach of ERISA § 502(a)(3). Two circuits have held a special needs trust and a similar *530 conservatorship arrangement liable for equitable restitution of ERISA plan benefits. See Shank, supra; Horton, supra. And in Knudson, the Court pointedly noted the absence of the special needs trust as a defendant, while Justice Ginsburg implied that the trust’s possession of the identifiable settlement fund could render it liable. There is nothing inconsistent in maintaining special needs trusts but also insisting they not be funded with proceeds transferred in violation of a beneficiary’s duty to satisfy an equitable lien by agreement with his ERISA plan.

Conclusion

Larry Griffin’s Trust could have been funded by an annuity reduced to satisfy his reimbursement obligation to the Plan. He and his attorneys chose instead to disregard the Plan’s equitable lien by agreement, as they attempted to divorce Larry and the Trust from possession and control of the settlement funds. Against this ruse, ACS asserts an equitable claim for restitution and seeks the equitable remedy of a constructive trust over the proceeds of the settlement fund as they come into the Trust’s possession. As we have explained, this claim is well supported in law. For the foregoing reasons, we REVERSE IN PART, AFFIRM IN PART, and REMAND for the imposition of equitable relief upon the Trust through Willie Griffin, Trustee.

. Accordingly, the settlement funds flow into the Trust’s possession.

. Judge Prado’s dissent asserts that ACS did not plead with sufficient particularity to obtain an equitable lien on the monthly payments received by the Trust under the Settlement Agreement. We disagree. Seeking "funds intended to be paid or received by the Defendants” does not limit ACS to a lump sum, nor to funds paid through intermediaries before reaching the Trust and Larry.

. The district court noted that ACS failed to object to the magistrate judge’s rejection of the motion for default judgment against Judith Griffin, and it refused further to consider that claim against her. Subsequently, the court's dismissal of the entire case covers ACS’s claim against Judith and resulted in a final, appealable judgment as to all parties.

. The Knudson decision, holding a plan’s claim against the beneficiaries was not for equitable relief, did not clearly rest on either failure to state a claim or lack of jurisdiction. Thus, we recur to basic procedural decisions of the Supreme Court.

. Metro Life Ins. Co. v. Price, 501 F.3d 271, 276-77 (3d Cir.2007); Carlson v. Principal Fin. Grp., 320 F.3d 301, 307 (2d Cir.2003); Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone, 197 F.3d 1003, 1008 (9th Cir.1999); Blue Cross & Blue Shield of Ala. v. Sanders, 138 F.3d 1347, 1352-53 (11th Cir.1998). The Seventh Circuit’s decisions are unclear. Compare Admin. Comm, of Wal-Mart Stores, Inc., Assocs.' Health & Welfare Plan v. Varco, 338 F.3d 680, 688 (7th Cir.2003) (arguably jurisdictional holding), with Health Cost Controls v. Skinner, 44 F.3d 535, 537 (7th Cir.1995) (failure to state a claim).

. The Court cited Bombardier as one example of the circuit split. Sereboff, 547 U.S. at 361 n. 1, 126 S.Ct. at 1873 n. 1.

. Courts have also imposed constructive trusts on ERISA plan beneficiaries who accepted tort settlements or disability payments without reimbursing the plan under an equitable lien by agreement. See, e.g., CGI Tech. & Solutions Inc. v. Rose, 683 F.3d 1113 (9th Cir.2012), cert. granted, judgment vacated on other grounds, — U.S. —, 133 S.Ct. 1995, 185 L.Ed.2d 863 (2013); US Airways, Inc. v. McCutchen, 663 F.3d 671 (3d Cir.2011), judgment vacated on other grounds, — U.S. —, 133 S.Ct. 1537, 185 L.Ed.2d 654 (2013); Funk v. CIGNA Grp. Ins., 648 F.3d 182, 195 (3d Cir.2011); Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215, 231 (1st Cir.2010); Popowski v. Parrott, 461 F.3d 1367, 1373 (11th Cir.2006); Dillard’s v. Liberty Life, 456 F.3d 894, 901 (8th Cir.2006).

. A judgment for restitution was entered against the beneficiary, who failed to appeal.

. Contrary to Judge Prado’s dissenting opinion, it is irrelevant whether the entire $50,076.19 is in the Trust’s possession at any particular time. The constructive trust still attaches to the particular funds owed to ACS as they reach the Trust penny by penny. It makes little sense to contend that equity would reach the funds if the Trustee had received the settlement money as a lump sum and then placed it in an annuity of Hartford, but because Hartford allegedly got the same money first and disburses it to the Trustee, no equitable remedy is available.

. Judge Haynes’s dissent places the burden on Congress to provide ERISA plans a "first money” right to funds recovered by a beneficiary from a third party. In doing so, the dissent overlooks the fact that § 502(a)(3) serves to enforce the contractual terms of ERISA plans. See McCutchen, 133 S.Ct. at 1547-49. The plans can create "first money” rights similar to those provided by statutes.

. Bauhaus is overruled to the extent it is irreconcilable with Sereboff's requirement that the funds only need to be in the defendant's possession.

. Contrary to the dissenting opinions, we do not find the Trust’s self-serving declarations dispositive on the issue of possession.