# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2014

Lyle W. Cayce
Clerk

No. 13-30647

MARY SMITH; PAMELA BAGNERIS BATISTE; ROBERT BOOKMAN; KENNETH BOURGEOIS; JAMES BROWN, JR.; et al,

Plaintiffs-Appellants,

v.

REGIONAL TRANSIT AUTHORITY; TRANSIT MANAGEMENT OF SOUTHEAST LOUISIANA, INCORPORATED,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, DAVIS, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

The principal question before the district court was whether the employers' pension benefit plan in this case is a "governmental plan" within the meaning of section 3(32) the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(32). The Plaintiffs-Appellants (the "Plaintiffs," collectively) are approximately forty former employees of New Orleans Public Service, Inc. and retirees of Transit Management of Southeast Louisiana, Inc. They filed suit claiming denial of medical insurance, Medicare premiums, and deductible reimbursements. The district court held that the pension benefit plan was a "governmental plan" exempt from ERISA and

No. 13-30647

granted RTA and TMSEL's (the "Defendants," collectively) motion to dismiss for lack of subject matter jurisdiction. Because we conclude that the district court employed the wrong procedural mechanism for analyzing this case, we vacate the judgment and remand this case to the district court.

I.

Prior to 1983, the New Orleans transit system was operated by New Orleans Public Service, Inc. ("NOPSI"), a private company. In the late 1970s and early 1980s, the system converted to a publicly held system, owned by the Regional Transit Authority ("RTA") and operated by Transit Management of Southeast Louisiana, Inc. ("TMSEL"). As a result of the change in ownership and management, all employees of NOPSI became employees of TMSEL. At the time the RTA purchased the transit system, NOPSI, the transit union, and the City of New Orleans had a preexisting agreement pursuant to the Urban Mass Transportation Act of 1964, which provided for "fair and equitable arrangements" for employee benefits. In March 1983, the RTA and TMSEL, as successors to NOPSI, agreed that they would continue to provide the same benefits employees enjoyed under the preexisting agreement.

In June 1983, the RTA completed the purchase of the transit system from NOPSI. At the same time, the RTA, TMSEL, and NOPSI entered into an additional agreement, "The Employee and Retiree Pension and Welfare Benefit Agreement" (the "Benefit Agreement") which specifically recognized the RTA and TMSEL's benefit obligations. The RTA became the sponsor of the Plan, and TMSEL became the administrator. The Benefit Agreement provided that each employee transferred from NOPSI to the RTA or TMSEL would continue to receive the same coverage and benefit levels they received as an employee of NOPSI. The Benefit Agreement also made the RTA and TMSEL

No. 13-30647

responsible for making any payments due for any benefits of the former NOPSI employees, and established a funding structure to ensure that the pension benefits were maintainable.

At the time of the purchase and agreements, the RTA was considered a public entity—a "political subdivision" of the state of Louisiana[1]—and TMSEL was a privately owned corporation, created in 1983 by an agreement between the RTA and ATE Management and Service Company to operate the transit system. In 2004, the Louisiana State Legislature designated TMSEL as a political subdivision for litigation purposes. *See* LA. REV. STAT. ANN. § 13:5102. In 2009, TMSEL ceased operations and no longer provided services to the RTA. From 2009–12, the public transportation was instead operated by a separate private corporation.[2] In 2012, the RTA became 100% owner of TMSEL.

The Plaintiffs are retired former employees of NOPSI and/or TMSEL. According to the Plaintiffs, from the system's private-to-public conversion in 1983 until March 2006, the RTA administered the Employee Benefit Plan ("the Plan") consistent with the Benefit Agreement: it provided premium-free medical insurance, life insurance, supplemental Medicare payments, and reimbursed Medicare premiums. However, the Plaintiffs allege that, in March 2006, the RTA and/or TMSEL stopped providing Medicare premiums and

---

[1] The RTA was created by state statute on August 1, 1979, and defined as a "body politic and corporate and a political subdivision of the state of Louisiana." LA. REV. STAT. ANN. § 48:1654(A).

[2] In 2005, the RTA entered into a Cooperate Endeavor Agreement with Interregional Transit, Inc. for the operation of the transit system. In 2008, TMSEL entered into an agreement with Veolia Transportation Services, Inc. for a similar purpose. It is unclear which corporation was operating the system after TMSEL ceased operations in 2009. We do not need to resolve this question, however, as it is not relevant to the determination of this appeal.

No. 13-30647

deductible reimbursements to retirees and began charging premiums for medical insurance.   The Plaintiffs aver they were originally told the changes were temporary, but that they have continued until the present day.

In December 2012, the Plaintiffs filed suit against the RTA as plan sponsor under § 1002(16)(B), and TMSEL as plan administrator under § 1002(16)(A), alleging that the Defendants violated ERISA when they implemented the changes to the benefit plan. The Plaintiffs sought to collect the same welfare benefits they had received from NOPSI. The complaint alleges that the RTA and/or TMSEL wrongfully denied ERISA welfare and retirement benefits in violation of 29 U.S.C. § 1132(a)(1)(B), and that the RTA and/or TMSEL breached their fiduciary duties under ERISA in violation of § 1132(a)(2).   The Defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The Defendants asserted that the benefit plan fell within the "governmental plan" exemption to ERISA, and that ERISA provided the only basis for subject matter jurisdiction.[3]   *See* 29 U.S.C. § 1003(b)(1) ("The provisions of [the coverage] subchapter shall not apply to any employee benefit plan if such plan is a governmental plan.").   The district court granted the Defendants' motion. The Plaintiffs appealed.

## II.

We have previously suggested that the "governmental plan" exemption implicates our subject matter jurisdiction such that claims concerning such a plan should be dismissed under Rule 12(b)(1).   *Shirley v. Maxicare Tex., Inc.*, 921 F.2d 565, 567 (5th Cir. 1991). In *Shirley*, we held that because a benefits

---

[3]  The Defendants alternatively moved for dismissal under Rule 12(b)(6), but the district court issued its ruling based solely upon Rule 12(b)(1).

plan was a "governmental plan" exempt from ERISA's requirements, the district court lacked jurisdiction to order arbitration. *Id.* at 566–67 (citing § 1003(b)). However, more recent developments in Supreme Court case law and our en banc decision in *ACS Recovery Services, Inc. v. Griffin*, 723 F.3d 518 (5th Cir. 2013) (en banc), *cert. denied*, 134 S. Ct. 618 (2013), make *Shirley* inapplicable to our decision today.

The Supreme Court has repeatedly instructed that we must avoid conflating the question of whether we have subject matter jurisdiction to consider a claim with the determination of whether the plaintiff has stated a valid claim for relief. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510–11 (2006); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–61 (2010) (explaining that the word "jurisdiction" refers to a court's adjudicatory authority and therefore only properly applies to specific delineations of that authority). For instance, the Court in *Arbaugh* rejected the argument that proving a defendant is an "employer" for purposes of Title VII was necessary to establish subject matter jurisdiction. *Arbaugh*, 546 U.S. at 508, 514–16. In so concluding, the Court applied a "readily administrable bright line" standard for determining whether a statute's provision is an element of a plaintiff's claim for relief or a jurisdictional requirement. *Id.* This standard turns on whether Congress has specifically designated a statutory limitation on coverage as jurisdictional. *Id.* at 516 ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."). Applying this standard, the Court focused primarily on the definition of "employer" in 42 U.S.C. § 2000e(b), explaining that the statute's text did not "clearly stat[e]" that the defendant must fall within the definition of "employer" in order for there to be federal

jurisdiction to consider the claim. *Arbaugh*, 546 U.S. at 515. The Court also observed that the definition of "employer" was not located in Title VII's jurisdictional provision, but rather "appeared in a separate provision that does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* (citation and internal quotation marks omitted).

Later in *Reed Elsevier*, the Court reiterated the importance of "using the term 'jurisdictional' only when it is apposite." 559 U.S. at 161. The Court held that the Copyright Act's requirement that holders register their works before suing for copyright infringement was not a jurisdictional limitation, in part because the registration requirement does not "clearly state[]" that it is jurisdictional and therefore should not be treated as such. *Id.* 163–66; *see also* 17 U.S.C. § 411(a).

In accord with the Court's direction, last year in *Griffin* we rejected our prior precedent that a failure to state a valid claim for equitable relief under ERISA deprived the court of subject matter jurisdiction. 723 F.3d at 522–23 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." (citation and internal quotation marks omitted))). We noted that whether a party has a *valid* claim does not implicate subject matter jurisdiction. *Griffin*, 723 F.3d at 523 ("[W]hether a claim for equitable relief under ERISA § 502(a)(3) has been stated is within federal courts' jurisdiction irrespective of the claim's ultimate merit."). In so

concluding, we effectively overruled our contrary precedent. [4] *Compare Griffin*, 723 F.3d at 523, *with Tinoco v. Marine Chartering Co., Inc.*, 311 F.3d 617, 623 (5th Cir. 2002) ("Where federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." (citation and internal quotation marks omitted)), *abrogated by Griffin*, 723 F.3d at 523. Our holding in *Griffin* employed exactly the kind of reasoning called for by the Supreme Court in *Arbaugh* and *Reed Elsevier* which has led at least five of our sister circuits to reject the notion that the actual existence (as opposed to the allegation) of a plan covered by ERISA is a jurisdictional prerequisite.[5]

---

[4] Post-*Griffin*, we examined whether a case involving an employment agreement and deferred compensation plan was a case about an ERISA plan through the lens of subject matter jurisdiction in a case removed from state court under *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63–67 (1987) (holding that, where ERISA completely preempts all state law claims raised, the case is removable under federal question jurisdiction despite the lack of any federal issues raised in the plaintiff's "well-pleaded" complaint). *See Cantrell v. Briggs & Veselka Co.*, 728 F.3d 444, 452 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1520 (2014). Notably, *Cantrell* did not involve the question of whether dismissal under Rule 12(b)(1) versus some other procedural mechanism was the appropriate procedure. Instead, the question was whether the case should be remanded to state court because the plan in question was not an ERISA plan (and, therefore, there would be no "complete preemption"). Probably for this reason, *Cantrell* failed to address *Griffin* or even mention it, and, thus, cannot be viewed as holding that *Griffin* is limited to its facts. Any language about "subject matter jurisdiction" must be understood in the particular procedural posture presented in *Cantrell*. Indeed, the *Griffin* analysis would not change the outcome in *Cantrell*. No one disputed the absence of a federal question in the "well-pleaded complaint." Instead, the case turned on the defendant's contention that the plan in question was an ERISA plan, allowing removal under the *Taylor* exception. As such, if the plan were not an ERISA plan, remand would be the appropriate remedy. In any event, to the extent that *Cantrell* and *Griffin* conflict, under our rule of orderliness, we must follow our earlier-decided en banc decision in *Griffin*, which effectively established that, where a plaintiff pleads that a plan is an ERISA plan, the question of whether this is correct does not affect the court's jurisdiction to adjudicate the claim. *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 n.8 (5th Cir. 2006).

[5] *See, e.g.*, *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*, 744 F.3d 623, 629 (10th Cir. 2014) ("[R]ecent Supreme Court decisions compel the conclusion that the existence of a benefit plan subject to ERISA is not a jurisdictional requirement but an element of a claim under ERISA."); *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 979 (9th

No. 13-30647

Here, the Plaintiffs filed suit seeking relief under ERISA and arguing that the Plan in question is governed by ERISA. The Defendants responded in the district court and before our court that federal jurisdiction is lacking because the Plan falls within ERISA's "governmental plan" exemption. *See* § 1003(b)(1). However, nothing in § 1003(b)(1) "clearly states" that the "governmental plan" exemption is a jurisdictional limitation, nor is this exemption listed in ERISA's jurisdictional provision—29 U.S.C. § 1132(e). *See Reed Elsevier*, 559 U.S. at 163; *Arbaugh*, 546 U.S. at 515. Therefore, unless the Plaintiffs' claim is "so insubstantial [or] implausible . . . as not to involve a federal controversy," the Plaintiffs' pleading triggers federal jurisdiction. *See Griffin*, 723 F.3d at 523 (citations and internal quotation marks omitted). This commonsense approach espoused by *Griffin* to the jurisdictional issue presented governs this case such that any contrary reading of *Shirley* cannot stand.[6]

---

Cir. 2012) ("[I]ntervening Supreme Court precedent compels us to conclude that participant status is an element of an ERISA claim, not a jurisdictional limitation. . . . By asserting a colorable claim that he is a plan participant, [the plaintiff] has satisfied the threshold for establishing federal court subject matter jurisdiction. The issue of participant status goes to the merits of his claim and not to the subject matter jurisdiction of the district court."); *Daft v. Advest, Inc.*, 658 F.3d 583, 590–91 (6th Cir. 2011) ("Therefore, in light of *Arbaugh* and its progeny, the existence of an ERISA plan must be considered an element of a plaintiff's claim[,] . . . not a prerequisite for federal jurisdiction."); *NewPage Wisc. Sys. Inc. v. USW*, 651 F.3d 775, 777 (7th Cir. 2011) ("Whether a claim is good differs from the question whether a district court possesses jurisdiction, a matter of adjudicatory competence. A federal district court is the right forum for a dispute about the meaning of ERISA[.]" (citation omitted)); *Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 307 (2nd Cir. 2003) (holding that the question of whether a plan qualifies as an employee benefit plan under ERISA goes to the issue of whether a plan participant is able to assert a valid claim under the statute and "is irrelevant to the question of whether the District Court has subject matter jurisdiction over her complaint.").

[6] Notably, the result in *Shirley* would be the same either way because once it was determined that ERISA did not apply, the district court could not compel arbitration under ERISA. Also, the procedural weight afforded to cases such as *Shirley* has been called into question by the Supreme Court. The Court has observed that judicial opinions have "often

No. 13-30647

Of course, once it is determined (through a Rule 12(b)(6) or 56 motion or a trial on the merits) that the plan at issue is a "governmental plan," then ERISA does not provide relief or remedies, and that claim must be dismissed. *See* § 1003(b)(1) ("The provisions of this subchapter shall not apply to any employee benefit plan if . . . such plan is a governmental plan."). However, that is different from stating that a district court lacks jurisdiction over a case where one party contends Plan A is an ERISA plan and the other party contends that Plan A is a "governmental plan" (or otherwise is not an ERISA plan). *See Steel*, 523 U.S. at 89 ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional power to adjudicate the case."); *see, e.g., Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 997 (9th Cir. 2010) ("[T]o ask whether the alleged Plan is subject to ERISA is a merits question.").[7]

Accordingly, because a federal district court has jurisdiction to decide whether or not a plan is an ERISA plan as claimed by the plaintiff in the complaint, we conclude that, under Supreme Court precedent and *Griffin*, the

obscure[d] the issue by stating that the court is dismissing for lack of jurisdiction when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Arbaugh*, 546 U.S. at 511 (citation and internal quotation marks omitted). The Court has instructed that these "drive-by jurisdictional rulings should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in the suit." *Id.* (citation and internal quotation marks omitted). *Shirley* concluded that the court lacked subject matter jurisdiction without addressing the question of whether the missing threshold fact—i.e., whether a plan was a "governmental plan"—meant that the matter should be dismissed for lack of jurisdiction or for failure to state a claim. *Shirley*, 921 F.2d at 567. Therefore, even absent *Griffin*, *Shirley*'s precedential value would be drawn into question by the Supreme Court's intervening admonitions. *See Arbaugh*, 546 U.S. at 511.

[7] Part of the confusion about the timing question here was caused by the analysis of the issue as one of subject matter jurisdiction, which is typically determined at the time the lawsuit is filed. *See, e.g.*, *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir. 1994) ("Subject matter jurisdiction is determined at the time that the complaint is filed.").

proper procedural vehicle to raise the question of whether a purported ERISA plan is a "governmental plan" is either Rule 12(b)(6) or, if factual information outside the pleadings is needed, Rule 56 (if factual issues cannot be resolved then, of course, a trial may be needed).   The question then becomes whether this procedural distinction makes a difference here.  *Cf. Daniels-Hall*, 629 F.3d at 998 (no difference in the outcome between the two procedures).   We conclude that it does.

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citation and internal quotation marks omitted).   In considering a challenge to subject matter jurisdiction, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Id.* (citation and internal quotation marks omitted).   Thus, under Rule 12(b)(1), the district court can resolve disputed issues of fact to the extent necessary to determine jurisdiction; by contrast, disputed questions of fact are anathema to Rule 12(b)(6) jurisprudence, unless those disputed facts are immaterial to the outcome.   *Compare Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) ("In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."), *with In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." (citation and internal quotation marks omitted)).   In light of the complexity of the facts here involved, this case cannot be resolved without some resort to "the facts."   As

such, because the procedural mechanism employed could very well affect the outcome, the matter should be directed to the district court in the first instance.[8]

Accordingly, we VACATE the district court's order in its entirety and remand for reconsideration under a proper procedural vehicle.   As a result, we do not reach the merits of the "governmental plan" argument or the timing question beyond noting that, typically, facts are assessed at the time the cause of action arose.   *See, e.g., Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995) (deciding whether a benefit plan was a "governmental plan" at the time it was terminated and members of the plan were denied payments from the resulting surplus of funds).

VACATED and REMANDED.

---

[8] Moreover, as the Supreme Court has observed, when the district court concludes that it lacks subject matter jurisdiction, that matter must be dismissed.   *Arbaugh*, 546 U.S. at 514. However, when the district court grants a motion to dismiss for failure to state a federal claim, the court has discretion to retain supplemental jurisdiction to consider pendent state-law claims.   *Id.*; *see also* 28 U.S.C. § 1367(a), (c)(3).   That, too, is a question for the district court in the first instance.