Justice MORGAN dissenting.
I respectfully dissent from the decision of the majority that the Assistant Clerk was authorized, in his discretion as exercised under the circumstances presented in this case, to properly remove Mr. Skinner as the Trustee of his legally incompetent wife's Special Needs Trust and guardian of her estate. While the majority in its opinion acknowledges that the Assistant Clerk erroneously construed a number of the provisions of the Special Needs Trust at issue, my learned colleagues stretch far too much to bring these critical errors within the realm of the proper exercise of broad discretion while simultaneously minimizing these missteps by overemphasizing the strength of his remaining findings. The fundamental misapprehension of the law exhibited by the Assistant Clerk is too profound to be salvaged in this manner. As a result, in my view, Mr. Skinner's removal from his position as Trustee of Mrs. Skinner's Special Needs Trust and guardian of her estate was not justified. I agree with the rationale of the Court of Appeals decision. In my view, the case should be remanded to the trial court for proper application of the correct legal standard.
In the first instance, the Assistant Clerk misinterpreted the essence of a special needs trust when making his decision to remove Mr. Skinner as Trustee and as guardian of his wife's estate. A special needs trust, such as the one at issue in the present case, which meets designated federal requirements as identified in 42 U.S.C. § 1396p(d)(4)(A) allows the beneficiary to maintain eligibility for Medicaid and Social Security disability benefits. "The whole purpose of a special needs trust is to shelter resources so that the state, through Medicaid, pays for medical expenses rather than having the beneficiary's family pay for them." Hobbs v. Zenderman , 542 F.Supp.2d 1220, 1234 (D.N.M. 2008), aff'd , 579 F.3d 1171 (10th Cir. 2009) ; ACS Recovery Servs., Inc. v. Griffin , 723 F.3d 518, 539 (5th Cir. 2013) ("The primary purpose of special needs trusts is to allow beneficiaries to maintain eligibility for public benefits-such as Medicaid-while supplementing those benefits so that the beneficiary enjoys a better quality of life." (Haynes, J. concurring in part and dissenting in part), cert. denied , --- U.S. ----, 134 S.Ct. 618, 187 L.Ed. 2d 400 (2013) ).
*462 This was a proper consideration by the Assistant Clerk, manifested by his requirement in his 9 October 2013 order appointing Mr. Skinner as guardian of Mrs. Skinner's estate that a special needs trust be established. This recognition is displayed in the Assistant Clerk's finding, which is also cited in the majority opinion, that "[Mrs. Skinner] would be at risk of losing her SSI benefits and Medicaid assistance if her inheritance is not placed in a Special Needs Trust ... [Mrs. Skinner] will have medical needs for the remainder of her life."
Subsequently, however, the Assistant Clerk incorrectly determined that the purpose of the Special Needs Trust was to shield Mrs. Skinner's resources for future medical expenses, rather than the actual purpose referenced in federal statutory and case law that authorizes a special needs trust to fund resources that will improve a beneficiary's quality of life while still protecting that beneficiary's ability to access governmental resources such as Medicaid and Social Security. The Court of Appeals correctly understood and applied this fundamental purpose of a special needs trust in reversing the Assistant Clerk's order that removed Mr. Skinner from the positions of authority for his wife.
The Assistant Clerk's misunderstanding of the purpose of the Special Needs Trust is a misapprehension of law that renders his decision to remove Mr. Skinner as Trustee and guardian of Mrs. Skinner's estate an abuse of discretion. While this Court's standard of review is limited to a determination of whether the Assistant Clerk abused his discretion, "an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction." Koon v. United States , 518 U.S. 81, 100, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392, 414 (1996) (citation omitted). It is well-established in this Court's decisions that a misapprehension of the law is appropriately addressed by remanding the case to the appropriate lower forum in order to apply the correct legal standard. See, e.g., Wilson v. McLeod Oil Co. , 327 N.C. 491, 523, 398 S.E.2d 586, 603 (1990) ; State v. Grundler , 249 N.C. 399, 402, 106 S.E.2d 488, 490 (1959), cert. denied , 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960).
The Assistant Clerk's decision to remove Mr. Skinner as Trustee is replete with other examples of misapprehensions of the law which amounted to an abuse of discretion, and which were duly noted by the Court of Appeals, in the Assistant Clerk's interpretation of the Special Needs Trust and Mr. Skinner's actions regarding it.
The Assistant Clerk erred by failing to distinguish between the use of Trust funds for funeral expenses after termination of the Trust and the use of Trust funds for the purchase of prepaid funeral or burial insurance during the beneficiary's lifetime. In his removal order, the Assistant Clerk reasoned that "[t]he Trust specifically states that funeral expenses are not permitted to be paid from the Trust prior to reimbursement to North Carolina (or any other state) for medical assistance." The Assistant Clerk then concluded that "Mr. Skinner's payment of $3,644.00 to Columbus Life for prepaid funeral expenses ... is in contradiction to the terms of the Trust and in violation of his fiduciary duties as Trustee." However, in accord with 42 U.S.C. § 1396p(d)(4)(A), upon the death of a beneficiary or upon early termination, a Special Needs Trust must reimburse the State for medical expenses. To comply with this provision, the Special Needs Trust provides that upon Mrs. Skinner's death, the Trustee is required to "notify the appropriate state agency of [Mrs. Skinner's] death and must promptly obtain an accounting from the states (or local Medicaid agencies of the states) that have made Medicaid payments on [Mrs. Skinner's] behalf during her lifetime."[1] The Special Needs Trust further provides that after the State is fully reimbursed, the Trustee may pay for funeral expenses. There is no provision in the Special Needs Trust that prevented Mr. Skinner from using trust funds to purchase prepaid funeral and burial insurance during Mrs. Skinner's lifetime. Therefore, the Assistant Clerk misinterpreted the federal statutory *463 provision mandating that, after death, the State was to be reimbursed before other expenses were paid, by erroneously construing the 42 U.S.C. § 1396p(d)(4)(A) language to bar payment for funeral and burial insurance before death.
The Assistant Clerk's inaccurate construction of the purpose of the Special Needs Trust likewise yielded an improper analysis of Mr. Skinner's decision to use trust funds to purchase a house to serve as the marital home for the Skinners, plus some furnishings. The Assistant Clerk found that Mr. Skinner used such assets to purchase the home, new furniture, and new appliances, and that because Mr. Skinner is the husband of the trust beneficiary wife and therefore resides in the home with her, he improperly benefits from the purchases. As a result, the Assistant Clerk reached the conclusion that Mr. Skinner showed a lack of prudence and judgment and "breach[ed] ... his fiduciary duties pursuant to the terms of the Trust, the terms of the GOE Order, and applicable law."
Contrary to the Assistant Clerk's misapprehension of the law, the purchase of the house and related expenditures were authorized by the Special Needs Trust consistent with the purpose of a special needs trust. Article Two of the Special Needs Trust here provides, in pertinent part, that
[t]he Trustee will hold, manage, invest and reinvest the Trust Estate, and will pay or apply the income and principal of the Trust Estate in the following manner: ...
During Beneficiary's lifetime, the Trustee will pay from time to time such amounts from the Trust Funds for the satisfaction and benefit of [the] Beneficiary's Special Needs (as hereinafter defined), as the Trustee determines in the Trustee's discretion, as hereinafter provided.
Section 7.02(a) of the Trust defines the term "special needs" as the "Beneficiary's needs that are not covered or available from any local, state, or federal government, or any private agency, or any private insurance carrier covering Beneficiary."
Here Mr. Skinner authorized trust assets to pay approximately $135,000.00 for the purchase of the house, which is titled to the Trust, and between $3,200.00 and $4,500.00 for furniture, appliances, and repairs to the house. The evidence shows that the house, furnishings, and appliances are owned by the Trust; the house is handicapped-accessible to readily accommodate Mrs. Skinner; and it is located in close proximity to where Mrs. Skinner previously lived. The determination of Mr. Skinner, in his role as Trustee, to improve Mrs. Skinner's quality of life through this move to a new home is consistent with the express purpose of a special needs trust. With the physical enhancements of new furnishings and fresh repairs for a better house suited to fit Mrs. Skinner's ongoing needs in a neighborhood which was familiar to her, Mr. Skinner's expenditures of the trust funds in this regard fall squarely within his discretionary authority to periodically pay such amounts for the satisfaction and benefit of his wife's special needs. The failure of the Assistant Clerk to recognize Mr. Skinner's sanctioned fulfillment of his duties as Trustee of Mrs. Skinner's Special Needs Trust, coupled with the Assistant Clerk's concomitant negative view of these permissible expenditures, constitutes a clear misapprehension of the law.
Finally, I must address the Assistant Clerk's ruling that Mr. Skinner's reimbursements which he obtained from the Special Needs Trust in the amounts of $1,000.00 and $1,537.50 for his payments to two law firms were unauthorized because these expenditures arose before Mr. Skinner's appointment to the roles of Trustee and guardian of Mrs. Skinner's estate. I embrace the Court of Appeals' position that the Assistant Clerk's misapprehension of the law on the other questioned usages of trust funds extended to a narrow view by the Assistant Clerk that Mr. Skinner was automatically ineligible for any reimbursements of expenditures that he plausibly made with regard to his guardianship status and the potential legal impact of the Skinners' marriage upon her financial well-being. I evaluate the Assistant Clerk's view of Mr. Skinner's withdrawal of $8,387.50 from the Special Needs Trust for payment to his violin business to be consistent with the Assistant Clerk's misapprehension of the law, which was reflected *464 in the Assistant Clerk's dark lens of perceived "self-dealing," "violation of [Mr. Skinner's] fiduciary duties as Trustee," "lack[ ] [of] appropriate judgment," and "waste [ ]," "mismanage [ment]" and "conver[sion]" of Trust assets regarding the prepaid funeral expenses, burial insurance, marital home, marital home furnishings, law firm bills and overall special needs trust administration. I believe that the Assistant Clerk's fundamental misapprehension of the law amounts to an abuse of discretion that would necessitate a reversal and remand of the trial court's order affirming the Assistant Clerk's order to remove Mr. Skinner as Trustee of his wife's Special Needs Trust and guardian of her estate.
For these reasons, I respectfully dissent and adopt the rationale of the Court of Appeals' decision, and would remand this case to the Court of Appeals for remand to the trial court with instructions to apply the appropriate legal standard.
Justices NEWBY and JACKSON join in this dissenting opinion.

Medicaid would have to be paid first if the Special Needs Trust was terminated early as well.